GIBSON *v.* HOLMES.

Opinion delivered February 17, 1919.

1. PARENT AND CHILD—CONVEYANCES—FRAUD.—In a suit to set aside a deed executed by a child to her stepfather after having her disabilities removed for that purpose, *held* that the consideration was so grossly inadequate as to justify a finding that the deed was procured by fraud and undue influence.

2. CANCELLATION OF INSTRUMENTS — INSURANCE MONEY COLLECTED ON PROPERTY.—In a suit to set aside a deed executed by plaintiff to her stepfather, she was not entitled to insurance money collected by him on account of a house on the premises destroyed by fire; the policy being for stepfather's benefit.

Appeal from Independence Chancery Court; *George T. Humphries,* Chancellor; modified and affirmed.

*John B. & J. J. McCaleb,* for appellant.

1. The preponderance of the evidence shows appellee was under 16 years of age when the order removing her disabilities was made and the order authorizing her to sell was not void. She made the application to a court of competent jurisdiction for the removal of her disabilities of minority and it having been made and never vacated or modified or appealed from it is conclusive upon her and not subject to collateral attack and she cannot maintain this action. 72 Ark. 299; Kirby & Castle's Digest, § § 7688, 5160; 79 Ark. 194.

2. It was error to decree her one-half of the fire insurance money paid for the house. She had no interest in the land or house as she had sold under the order authorizing her to sell. 73 Ark. 211, 218.

3. The amount for which judgment was rendered was erroneously calculated taking the findings of the court as a basis. It was the homestead and she was not dispossessed. She had married and voluntarily emancipated herself. She could not voluntarilly leave the homestead and then sue her mother for all the rents and income she might have shared had she remained at home and impose the burden of taxes, repairs, expenses, etc., upon her mother.

4. Appellants acted with the utmost *bona fides* and paid her full value for the land. Her mother was entitled to the homestead for her life. It was error for the chancellor to follow (96 Ark. 573) as it has no application. This action as the evidence shows is fabricated and rests upon a fabrication of falsehood. Gibson has permanently improved the property believing he was the owner and made large expenditures for permanent improvements and betterments and the decree is inequitable and unjust besides the order removing the disabilities is not subject to collateral attack. The judgment should be reversed and the action dismissed.

The appellee *pro se.*

The decree is sustained by the evidence and the findings should not be disturbed unless clearly against the evidence.    84 Ark. 429; 53 *Id.* 513; 4 *Id.* 251.

If the decree is excessive this court should order a remittitur of the excess and not reverse but affirm.    76 Ark. 184; 77 *Id.* 152, 326.

SMITH, J.    This was an action by appellee, Ada Holmes, against appellant, Jack Gibson, to set aside a certain deed executed by her to him on October 30, 1911, after having her disabilities of minority removed for that purpose, appellee claiming that she was under the age of sixteen years at that time and that, therefore, the order of the court was void.

She also claims that the deed was procured by fraud and undue influence, and sued for back rents and for the insurance money collected by appellant on account of a certain house on the place which had been destroyed by fire.

The court found in her favor and decreed a cancellation of the deed and gave her judgment for one-half of the rental value of the lands for five years with interest and one-half of the insurance money with interest; but made no finding as to her age, the decree on that point merely reciting "that she was a minor and incompetent in law to sell land."

We agree with counsel for appellant that the preponderance of the evidence is to the effect that the appellee was over the age of sixteen at the time of the removal of her disabilities and that the order authorizing her to sell and convey her interest in the land was not void on that account.    However, while we do not think the order is void, we regard it as fitting to consider the circumstances under which it was made as bearing upon the question of fraud and undue influence practiced in procuring the execution of the deed.

Appellee was partly blind and had spent three months at the State School for the Blind, where she ob-

tained most of the limited education which she had. The tract of land contained 135 acres and had been her father's homestead and continued so to be until his death in 1899. Appellee had a sister named Rhoda, who was eight years her senior. This child also sold her interest in the land to appellant for a consideration not substantially more than that paid appellee. This child died some years before the institution of this suit. Appellee had married at the time of the execution of the deed here sought to be set aside, but says she did not read it and would not have understood it had she read it. She admits that she knew it conveyed her entire interest in the lands described which had been owned by her father, but she testified that her mother had told her that she had only inherited thirteen acres from her father and that that interest was subject to the widow's dower. That she did not know that she was entitled to any part of the rent of the homestead during her minority, and no accounting had ever been made to her of any such rents.

The petition to remove appellee's disabilities was filed by her mother as her next friend and recited her age to be seventeen years, and the deed conveying the land was executed on the day the order of the court was made, and it is not denied that the order was obtained to effectuate an agreement previously made. It is true that appellee had married and had removed from the home of her mother prior to the execution of the deed; but no estrangement between them had occurred and she relied on her mother's representation as to the extent of her interest at the time she executed the deed to her stepfather. Mrs. Gibson denied that she had ever told her daughter that she owned only thirteen acres, but she admits that she told her that she owned a third of the thirty-nine acre home place and she admits that she never told appellee that she owned any other land. She testified that what she said to appellee was as follows: "I told her that if I had a dower in a certain 40 acres of land it would be 13 acres."

The testimony is in irreconcilable conflict as to the value of the land. There are witnesses who place the value of the interest conveyed at a price no higher than the sum received, while other witnesses place the value of the entire tract at $2,500, and some even higher.

The same discrepancy in the testimony exists as to its rental value. Some of the witnesses place it at only a few dollars, while others were of the opinion that the rent was worth $300 per annum. The court found that the rental value was $150 per annum and, as this rent accrued from the homestead, allowed appellee one-half of it in the account which was stated.

Appellant only claims to have paid $225 for appellee's interest in the land, and $150 of this amount was represented by a horse, which he says was of that value, while appellee testified that the horse was an old one worth only about $50.

Upon the consideration of all the testimony, we are of the opinion that the consideration paid was grossly inadequate and that when the relationship between the parties is considered the court was warranted in the finding made that the execution of the deed had been procured by fraud and undue influence. *Giers* v. *Hudson*, 102 Ark. 232; *Million* v. *Taylor*, 38 Ark. 428; *Reeder* v. *Meredith*, 78 Ark. 111.

Appellant had insured a house on the land which burned and after the fire he collected $375 insurance, and the court rendered judgment for one-half this sum, with interest thereon, together with one-half the rent and the interest thereon, less the $225 purchase money and interest amounting to $306.80. Appellant calls attention to what we conceive to be an error in the calculation of the rent, and his figures on that account are adopted as correct. The correct charge for rent amounts to $453.75. We also agree with counsel for appellant in the contention that appellee should not have had credit for anything on account of the insurance policy, as this was a personal contract for appellant's own benefit. *Langford* v. *Searcy College*, 73 Ark. 211.

The account will, therefore, be restated by charging appellant with $453.75 on account of rent and crediting him with $306.80, the purchase money, and judgment will be rendered against him for the balance of $146.95, and as thus modified the decree will be affirmed.