Dailey, by guardian ad litem, vs. Kastell and another.

DAILEY, by guardian *ad litem*, vs. KASTELL and another.

*December 12, 1882 — January 9, 1883.*

EQUITY: VENDOR AND PURCHASER OF LAND. *(1) What influence is undue. (2) Conveyance from parent to child. (3) Purchaser or mortgagee chargeable with notice of contents of deeds in chain of title: Agreement affecting consideration.*

1. To influence a weak-minded person to do what is just and for his best good is not unlawful. Such influence is not *undue* and does not necessarily vitiate the act produced by it.

2. Under the circumstances of this case it is *held* that the execution of a conveyance of lands by an aged mother to her daughter in consideration of the promise of the latter to support the grantor and her weak-minded son during their respective lives, was not an improvident act and was not obtained by *undue* influence.

3. The consideration expressed in such conveyance was "five dollars and the faithful performance of a certain agreement." The daughter subsequently married one K. and conveyed the lands to him for the same expressed consideration. Both deeds were recorded. Afterwards the mother executed a quitclaim deed of the same lands to K. in which was a recital that it was given to correct an apparent misnomer in the original conveyance to the daughter. Thereupon K. executed a mortgage of the lands to one B., who knew of the quitclaim deed and the purpose for which it was given. *Held*, that B. was chargeable with notice of the contents of the former conveyances and that an agreement affecting the consideration existed between the parties, although such agreement rested in parol. And, it appearing from the evidence that a proper inquiry would have disclosed the nature of such agreement, the same is held to be a charge or lien upon the lands, paramount to B.'s mortgage.

APPEAL from the Circuit Court for *Washington* County.

This action was brought to set aside and cancel certain conveyances of land. It appears from the pleadings and evidence that in 1876 the plaintiff, *Nancy Dailey*, who was then between seventy-five and eighty years of age, owned and resided upon forty acres of land in Washington county. Two of her children resided with her. These were Jane,

then about thirty-five years of age and unmarried, and John, who was imbecile. During that year she procured one Seabold to draw a conveyance of her land to Jane. The consideration expressed therein is "five dollars and the faithful performance of a certain agreement." This instrument is otherwise in the usual form of a deed of warranty, and was signed and acknowledged by the grantor and left in the custody of Seabold. In September, 1879, the defendant *John G. Kastell* intermarried with Jane Dailey, and at some time thereafter, probably during the same year, procured such deed from Seabold. The complaint alleges nondelivery of the deed. Whether it was delivered to *Kastell* with the knowledge and consent of the grantor is one of the questions of fact litigated on the trial. In September, 1880, Jane conveyed the land to her husband. The same consideration is expressed in this conveyance as in that from the plaintiff to Jane. Both of said deeds were then recorded in the proper office. Jane died in March, 1881. On the 3d of October, 1881, the plaintiff executed a quitclaim deed of the same land to the defendant *Kastell*. It is stated therein that she executed it to correct an apparent misnomer in the deed to Jane, in which she is named *Ann* Dailey. *Kastell* thereupon executed a mortgage for $1,000 to the defendant *Mrs. Bitz* on the land in question and another forty-acre lot. Of this sum $600 was loaned by her to *Kastell* some time before, and was secured by a mortgage on such other lot. That mortgage was released by *Mrs. Bitz*, and an additional $400 loaned by her to *Kastell* when the $1,000 mortgage was given. In February, 1882, the county court adjudged the plaintiff incompetent to manage her property and business, and appointed her son Thomas Dailey her guardian, who, by leave of court, immediately thereafter brought this action to set aside and cancel all of the deeds above mentioned, and to free the land from the incumbrance of the mortgage of *Mrs. Bitz*. The grounds alleged for relief are (1) that the deed

to Jane was never delivered to her; (2) that the plaintiff was mentally infirm by reason of her great age, and both conveyances executed by her were obtained by fraud and undue influence; and (3) that both defendants had knowledge of all the facts which render these conveyances invalid. The answers of the defendants deny the existence of either of these grounds for relief.

After trial the circuit judge duly filed his findings of facts, and conclusions of law, as follows:

Findings of facts:

"1. That the said *Nancy Dailey* is as well known by the name of *Ann* Dailey as by the name of *Nancy Dailey*.

"2. That the deed of the premises described in the complaint, executed by said *Nancy Dailey*, by the name of *Ann* Dailey, on the 1st day of May, 1876, and placed in the hands of said J. E. Seabold, was subsequently delivered to the grantee, Jane Dailey, during her life-time, by the directions and order of the said *Nancy Dailey;* that said delivery took place prior to the conveyance of said land from said Jane to her husband, the defendant *John G. Kastell.*

"3. That at the time of the execution of said first above-mentioned deed, and of the delivery thereof to the said Jane, the said *Nancy* was of sound mind, memory, and understanding, and mentally competent to transact her own business, and was free from any undue influence whatever from said Jane, said *John G. Kastell*, or any other person.

"4. That the consideration for said conveyance of said land to the said Jane was the love and affection which the said *Nancy* bore towards her, as well as the undertaking on the part of the said Jane to support and maintain the said *Nancy*, and her said imbecile son, John, during their natural lives.

"5. That on the 15th day of September, 1880, the said Jane, for a good and valid consideration, by warranty deed, conveyed said premises to said defendant *John G. Kastell*,

her then husband, and that said *John G. Kastell* immediately thereafter took possession of said premises, claiming the same under said deed to him, and has ever since been in the uninterrupted and undisputed possession thereof, and has made valuable and permanent improvements thereon, to the value of $300.

"6. That as the consideration for said conveyance of said land to him, the said *John G. Kastell*, he, with the assent and approval of the said *Nancy*, agreed to and did, in the place and stead of the said Jane, assume the support and maintenance of the said *Nancy* and her said imbecile son, John, for and during the balance of their natural lives; which support and maintenance the said *John G. Kastell* has faithfully given and furnished to the said *Nancy* and said imbecile John, from said 15th day of September, 1880, up to the commencement of this action, and until he was prevented by said guardian, and is now, and always has been, ready and willing to continue such support and maintenance, and which support and maintenance has been in all respects suitable and proper for said *Nancy* and said John, and has been to the entire satisfaction of the said *Nancy*.

"7. That from said 1st day of May, 1876, to said 15th day of September, 1880, the said Jane, before her marriage to said *Kastell*, and she and her said husband after their marriage, supported and maintained said *Nancy* and her said imbecile son, John, to the entire satisfaction of the said *Nancy*, and in a manner suitable to their condition, and in every respect complied with her agreement for their support, during all of which time the said *Nancy* was of sound mind, memory, and understanding, and mentally competent to transact her own business, and was free from any undue influence whatever from said Jane, or her said husband, *John G. Kastell*.

"8. That on the 3d day of October, 1881, the said *Nancy Dailey*, to correct what was then supposed to be a mistake

in a prior deed, and to remove any supposed cloud upon the title to said lands, executed and delivered to said *John G. Kastell* a quitclaim deed thereof, to the end that he might make said loan of $1,000 and secure the same by mortgage thereon, at which time the said *Nancy Dailey* was of sound mind and memory, and mentally competent to transact her own business, and understood and comprehended the legal effect of said deed, and was free from any undue influence whatever from any person whomsoever.

"9. That all the acts of the said *Nancy*, relative to the various transactions aforesaid, were free and voluntary, and were not procured by fraud, deceit, or undue influence.

"10. That on the 15th day of October, 1881, the said *John G. Kastell*, then being the owner in fee and in possession of said premises, made, executed, and delivered to said defendant, *Mary C. Bitz*, a mortgage in the sum of $1,000 on the same, together with other lands, and which said mortgage was given to secure the payment of a loan of $1,000 made prior thereto by the said *Mary C. Bitz* to said *John G. Kastell*, and that all the material allegations of the answer of the said *John G. Kastell* are true as therein alleged.

"11. And since the said defendant *John G. Kastell* has in his answer herein, and also in open court, declared his willingness to secure to the said *Nancy* and her said imbecile son, John, their support and maintenance, by agreement secured by mortgage on said premises, I find the same to be equitable, and direct that the same be done accordingly.

"12. That at the time of the execution of said $1,000 mortgage the said *Mary C. Bitz* had no knowledge, either actual or constructive, of any fraud perpetrated by any person in relation to the obtaining of the title to said premises from the said *Nancy Dailey*, nor as to any lien, either legal or equitable, of the said *Nancy Dailey* in and upon said premises, and that all the material allegations of the answer of the said *Mary C. Bitz* are true as therein alleged."

Conclusions of law:

" 1. That said deed of conveyance, executed on the 1st day of May, 1876, by said *Nancy* to said Jane, is a legal and valid deed of conveyance of said premises from said *Nancy Dailey* to said Jane, for a valuable consideration, from the day the same was so delivered to said Jane, and vested in said Jane the title to said land in fee-simple.

" 2. That said deed from said Jane to her said husband, *John G. Kastell*, was a legal and valid deed, and vested in him the title to said premises in fee-simple.

" 3. That said quitclaim deed from said *Nancy* to said defendant *John G. Kastell* was legal and valid.

" 4. That at the time the said *John G. Kastell* executed said mortgage of $1,000 to said defendant *Mary C. Bitz*, he was the owner in fee of said premises and in possession thereof, and had a legal right to mortgage the same to her in manner and form as he did, and that the said *Mary C. Bitz* is a *bona fide* mortgagee thereof to that amount, and that the lien of the said $1,000 mortgage is prior to any lien of the said *Nancy Dailey* in the said premises.

" 5. That the said plaintiff has no cause of action herein, and that judgment should be entered against said plaintiff and in favor of said defendants.

" Judgment is therefore ordered to be entered accordingly."

The plaintiff appealed from a judgment dismissing the complaint.

*P. O'Meara*, for the appellant, argued, among other things, that the deed from the plaintiff to her daughter should be held void, because the latter took an unjust advantage of the mental weakness of the plaintiff. *Encking v. Simmons*, 28 Wis., 272; *Henderson v. McGregor*, 30 id., 78; Willard's Eq. Jur. (Potter's Ed.), 178; *Whelan v. Whelan*, 3 Cow., 537; *Brice v. Brice*, 5 Barb., 533; *Sears v. Shafer*, 2 Seld., 268. The defendant *Bitz* had notice from the record of the lien and

rights of the plaintiff in the premises. The recitals in the deed to Jane and in that from Jane to *Kastell* were sufficient to put *Mrs. Bitz* upon inquiry, and the last deed from the plaintiff to *Kastell* would not relieve her from inquiry; for not only are the recitals in a conveyance under which a vendee holds immediately, binding upon him, but he is also bound to give heed to the recitals in prior instruments which are necessary to complete his chain of title. *Corbitt v. Clenny*, 52 Ala., 480; *Deason v. Taylor*, 53 Miss., 697; *Wiseman v. Hutchinson*, 20 Ind., 40; *Johnson v. Gwathmey*, 4 Littell, 317; *Cambridge Valley Bank v. Delano*, 48 N. Y., 326; *Lodge v. Simonton*, 23 Am. Dec., 48, and note.

There was a brief by *Frisby & Weil*, for the respondent *Kastell*, and *Barney & Kuechenmeister*, for the respondent *Bitz*, and oral argument by *Mr. Frisby* and *Mr. Barney*. They argued, *inter alia*, that a contract with a lunatic will not be set aside if there was no lack of good faith in the other party, or if the bargain is beneficial to the lunatic. 1 Story's Eq. Jur., §§ 227–233; *Hallett v. Oakes*, 1 Cush., 296; *Seaver v. Phelps*, 11 Pick., 304; *Encking v. Simmons*, 28 Wis., 272. And where a person is not actually *non compos* but merely weak in mind, he will be protected from his own improvidence upon the ground of fraud only. 1 Story's Eq. Jur., §§ 234, 237–239; *Blackford v. Christian*, 1 Knapp, 77; *Tracey v. Sacket*, 1 Ohio St., 54. The simple fact that he is of weak understanding, unaccompanied by evidence of undue and fraudulent advantage, does not afford ground for setting aside his improvident contracts. 1 Story's Eq. Jur., § 238; *Mann v. Betterly*, 21 Vt., 328; *Dunn v. Chambers*, 4 Barb., 376; *Aiman v. Stout*, 42 Pa. St., 114; *Darnell v. Rowland*, 30 Ind., 342; *Beverly v. Walden*, 20 Gratt., 147. The recitals in the deed from the plaintiff to Jane and from the latter to *Kastell*, of the consideration, as being "five dollars and the faithful performance of a certain agreement," etc., were not constructive

notice of any claim of the plaintiff. Whatever may have been the consideration, or whether the agreement was executed or executory, the deed acknowledged its receipt. This was equivalent to saying that the grantor claimed no lien upon the land, and either that the agreement was already executed, or, if executory, that the personal obligation of the grantee was satisfactory, or that other satisfactory security had been taken. By the terms of the instrument the plaintiff is estopped from setting up any claim as against innocent purchasers or incumbrancers. 2 Sugd. on Vendors (Am. ed.), 549; *White v. Wakefield*, 7 Sim., 401; *Carr v. Miner*, 42 Ill., 179; *Knight v. Wiffen*, L. R., 5 Q. B., 660; Bigelow on Estoppel, 281–284, 429; *McMullin v. Glass*, 27 Pa. St., 151; *People v. Reeder*, 25 N. Y. 302; *Gibson v. Bank of Ohio*, 11 Ohio St., 311. Parol evidence to contradict the consideration clause in a deed is admissible only as between the parties to the instrument, and cannot affect the rights of third parties. *McCrea v. Purmort*, 30 Am. Dec., 103–117, and note; *Halliday v. Hart*, 30 N. Y., 474; *Murray v. Smith*, 1 Duer, 412; Bigelow on Estoppel, 427–429; *Greenvault v. Davis*, 4 Hill, 643; 6 Wait's Act. & Def., 701; *Gardiner v. Suydam*, 7 N. Y., 357.

LYON, J. It was said by the present chief justice, in *Leonard v. Barnum*, 34 Wis., 105, that " the rule is familiar and almost axiomatic that where parties occupy with respect to each other peculiar relations in which confidence is necessarily reposed by one party, and influence is acquired by the other, all transactions and dealings between them are watched by courts of equity with more than ordinary jealousy to see that such confidence is not betrayed." And again: " An agreement, to be valid, must be freely entered into by the parties and there must be no concealment of material facts, and no surreptitious advantage taken by the intelligent and strong over the unwary and ignorant." All acts, omissions,

and concealments which involve a breach of legal or equi-
table duty, trust or confidence, justly reposed, and which are
injurious to another, or by which an undue and unconscien-
tious advantage is taken of another, are fraudulent. 1 Story's
Eq. Jur., § 187. By these rules the validity or invalidity of
the conveyance by the plaintiff to her daughter Jane in 1876
must be determined.

We cannot disturb the finding of the learned circuit judge
that such deed was delivered to Jane by direction and order
of the plaintiff. Although there is a conflict of testimony
on the question, we find no such clear preponderance against
the finding as will authorize us to set it aside. Was the ex-
ecution of that deed by plaintiff to Jane an improvident
act? and was the same obtained by undue influence exercised
by Jane over her mother?

It does not appear that Mrs. Dailey had any considerable
property besides the land in controversy, which the testi-
mony shows is worth from $2,000 to $2,500. In 1876 she
resided on the land with Jane and her imbecile son, John,
and they had resided there for several years. Mrs. Dailey
had other children, but they had left home, and it does not
appear and is not claimed that they contributed anything to
the support of their mother. It is very apparent that the
product of the land was the only means of support which
the family had. Jane had always lived with her mother, and
cared for her and John. She was evidently a woman of
activity and energy, and equal to the task imposed upon her.
She seems to have had the whole management of the farm
and family affairs — necessarily so — and she managed them
well.

Under these circumstances it was not an improvident act for
Mrs. Dailey to convey her land to Jane, upon the considera-
tion that Jane should support and maintain her and her weak-
minded son during their respective lives. Considering the
value of the property, and the probabilities of the lives of

the beneficiaries, the consideration was ample. Considering also the services of Jane to her mother and brother, the conveyance was eminently reasonable and just. True, the deed to Jane was inartificially drawn. It should have fully expressed the conditions upon which it was made, or Jane should have executed an undertaking to maintain her mother and brother. But that difficulty is now removed by the execution by *Kastell* and his present wife to *Mrs. Dailey* and John of the mortgage required by the circuit court on the same land to secure such maintenance. Although it must be conceded that Jane had a controlling influence over her mother, and probably induced her to execute the deed under consideration, yet, in view of the facts that the conveyance was a reasonable and just one, and that *Mrs. Dailey* had sufficient mental capacity to make a valid conveyance (although weak in mind), it cannot properly be said that such influence was unduly or wrongfully exerted. It is not unlawful to influence a weak-minded person to do that which is just and for the best good of such person. Such influence is not undue,— in other words, is not fraudulent,— and does not necessarily vitiate the act produced by it.

It is unnecessary to prolong remarks upon the general features of the case. We have carefully examined and scrutinized the testimony in the light of the rules above stated, and are unable to say that it preponderates against any of the findings of fact, so far as they affect the defendant *Kastell*. He has done and is ready to do all that equity requires of him, and until he fails in that behalf his title should not be disturbed. In case of such failure hereafter, the court on proper proceedings will cancel the conveyance to Jane, and from her to him, without hesitation. *Bogie v. Bogie*, 41 Wis., 209; *Bresnahan v. Bresnahan*, 46 Wis., 385; *Blake v. Blake, ante,* p. 392; and *Delong v. Delong, post,* p. 514.

We cannot concur in that portion of the eighth finding of

fact to the effect that the plaintiff was of sound mind and memory, and mentally competent to transact her own business, when she executed the deed of October 3, 1881, and understood and comprehended the legal effect of such deed. The proofs satisfy us that such was not the fact. Moreover, only four months later a competent court adjudged her incompetent to have charge of her property, by reason of extreme old age. No rights adverse to her can or ought to be predicated on that instrument. Neither can the last finding be upheld, that the defendant, *Mrs. Bitz*, when she took her mortgage, had no notice of any lien of the plaintiff, legal or equitable, upon the land in controversy. The deed of October 3, 1881, executed by *Mrs. Dailey* to *Kastell*, was made for the purpose of correcting a misnomer in the deed of *Mrs. Dailey* to Jane, and refers to that deed. *Mrs. Bitz* knew the purpose for which the deed of October 3d was executed, and presumably knew its contents. There is considerable testimony tending to prove that she had actual notice of the deed to Jane, and of her conveyance to *Kastell*. But, whether she did or not, the recitals in the deed of October 3d were sufficient to put her upon inquiry. She was thus informed that *Mrs. Dailey* had once conveyed the land to Jane, and this made it necessary for her to know that Jane had conveyed before her decease. That she actually knew of the existence of both these conveyances scarcely admits of a doubt. She is, therefore, chargeable with notice of their contents, and there was sufficient in each of them to put her upon inquiry. Both told her that an agreement existed between the parties affecting the consideration for the land. If she had asked *Kastell* what it was he would have told her, no doubt, as he answers here, that it was an agreement to support and maintain for life *Mrs. Dailey* and John. It was her duty to make the inquiry.

It is immaterial that the agreement rested in parol. She could not safely disregard it for that cause, for any court of

equity in any civilized country, having jurisdiction, would annul a conveyance executed under such circumstances, if the grantee should refuse to perform such parol agreement. Furthermore, transactions like these between *Mrs. Dailey*, Jane, and *Kastell* are not, usually, very secret. Those in question here were well known in the neighborhood, and were the subjects of frequent conversations between the parties thereto, and their neighbors and friends. *Mrs. Bitz* lived in that neighborhood, and knew *Mrs. Dailey* a quarter of a century. When she made the loan to *Kastell* (which was after Jane died), she admits she knew *Kastell* was supporting *Mrs. Dailey*. She knew also that *Mrs. Dailey* continued to reside upon the premises. It seems almost incredible that, knowing all these facts, the suspicion never crossed her mind that possibly *Mrs. Dailey* had some interest in the little farm which she once owned and had never left, and from which her subsistence and that of her imbecile son had been drawn for many years. Our conclusions are that when *Mrs. Bitz* took her mortgage she was chargeable with notice of the agreement of *Kastell* to support *Mrs. Dailey* and her son; also that the title of *Kastell* was liable to be annulled if he refused to execute the agreement which was the sole consideration of the conveyances from *Mrs. Dailey* to Jane, and from Jane to him, and that if he elected to execute the agreement (as he does) the court would decree the obligation so to support and maintain *Mrs. Dailey* and her son a charge upon the lands paramount to the lien of any mortgage executed thereon by *Kastell* to a mortgagee with notice of the plaintiff's equities.

It results from the above views that as to the defendant *Kastell* the judgment of the circuit court must be affirmed; and as to the defendant *Mrs. Bitz*, the judgment is reversed; and the cause will be remanded with directions that judgment be entered declaring the mortgage executed by *Kastell*

and wife to the plaintiff and John a first lien and charge upon the land paramount to the lien of the mortgage of *Mrs. Bitz.*

*By the Court.*— Ordered accordingly.

