MARKING and others, Respondents, vs. MARKING, imp., Appellant.

*March 2 — March 20, 1900.*

*Deeds: Adequacy of consideration: Undue influence: Confidential relations.*

1. A woman eighty-eight years old conveyed land worth $1,400 to her son in consideration of his agreement to pay her $50 per year during her life and to pay the incumbrances on the land, being the sum of $200 due to the state on the original purchase price, and a mortgage for $700. These sums were past due and were bearing interest, and the grantor was unable to pay them. Had payment been enforced it is doubtful if the property would more than have paid principal, interest, and costs. *Held*, that the transaction was not so unjust or unreasonable, as a business proposition, as to indicate on its face that the son had taken advantage of his mother to secure an unjust benefit to himself.

2. The mother in such case had a good memory and understood what she was doing, and the son did not attempt to deceive her, but she followed his suggestions because she relied on his judgment. *Held*, that the deed would not be set aside on the ground of undue influence at the suit of the heirs of the grantor. In order to warrant such relief one party must have gained an unconscionable advantage over the other by improper means and practices.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Jones & Stevens*, and oral argument by *E. Ray Stevens.*

For the respondents there was a brief by *H. Pfund* and *F. W. Hall*, and oral argument by *Mr. Hall.*

BARDEEN, J. This is an action in equity to set aside a deed from Magdalena Marking, deceased, to her son, the defendant *John Marking*, on the ground of undue influence. The court found that Adolph Marking purchased the land in 1852, and died in 1868, and the property passed to his widow. In 1890 she deeded the same to her son, who gave her a contract to pay her $50 per year during life. At that time the property was worth $1,400. Her son held a mortgage upon it amounting to over $700. There was also at that time due the state of Wisconsin $200, as near as we can make out, on the original purchase price of the land. The consideration for the deed was the contract mentioned, the release of the mortgage, and the payment by the son of the amount due the state. The son continued to occupy the premises until September 28, 1891, when he conveyed the same to the defendant John Wagner, who the court finds was an innocent purchaser. The mother lived until July 9, 1897, and at different times from 1890 to 1897 the son paid to *Mrs. Eiler* $325 for the mother, upon the contract mentioned. This was the full amount due on the contract according to its terms, except that for one year there was a rebate of $25 allowed by agreement.

The court finds that at the time this deed was made the grantor was eighty-eight years of age; that she was somewhat frail in mind and body, and partially blind; that at times she labored under hallucinations as to her ability to communicate with the future world, which would last two or three days, after which she was rational and competent to understand her affairs to such an extent as was usual with persons of her age and health. The court finds fur-

ther that her son took her to a notary, who drew the deed; that the mother understood what was being done, but did not act upon her own will; that she relied upon and followed her son's suggestions "simply by reason of the fact that she believed in his judgment;" that there was no actual deception or overpersuasion, but, because their relations were confidential, the mother did not exercise an independent judgment, and hence acted under undue influence.

The conclusion of the court was that the deed was void and that the heirs of Mrs. Marking were entitled to maintain this action. Wagner being an innocent purchaser, the court found the value of the land as stated, and, after deducting the amount due the state and upon the mortgage, gave judgment for $495.08, which was to be distributed among the heirs on the basis that each child of Mrs. Marking, excluding defendant *John Marking*, was entitled to one sixth. The evidence showed that there were seven children, and the judgment rendered excludes said defendant from any interest in his mother's estate. The conclusion we have arrived at, however, renders this circumstance of no importance.

The defendant, who has appealed from the judgment, insists that, if it be admitted that all the facts stated in the findings are true, the situation presented is not such as to warrant the court in the conclusion reached. With this contention we are inclined to agree. The proofs fall far short of showing a case where the defendant has profited by the exercise of undue influence upon his mother. In the first place, the court was in error in assuming that the mother's interest in the property at the time the deed was made was the difference in dollars and cents between the value of the land and the other amounts stated. She had but an equity of redemption, liable to be defeated by an assertion of the claim of the state, and further incumbered by a mortgage of over $700. These sums were past due, and were bearing

interest.  She had no funds to pay them, and they could be enforced at any time.  Had they been enforced, it is doubtful if the property would more than have paid principal, interest, and costs.  It is also doubtful if the mother could have secured a more advantageous sale than she did had she been dealing with a stranger.  As a business proposition, it was very far from being unjust or unreasonable.  So we say there was certainly nothing on the face of the transaction that would indicate that the son had taken advantage of his mother to secure an unjust benefit to himself.  It was certainly not an improvident act of Mrs. Marking to convey the land to her son under the circumstances suggested.  Considering the value of the property, the indebtedness against it, and the contract made and kept, the consideration was ample.  The conveyance was eminently reasonable and just.

Moreover, the court has not found facts that would justify the interference of a court of equity.  On the subject of undue influence in securing the deed, the court finds that the son did not attempt to deceive his mother, but that she followed his suggestions because she relied upon his judgment.  There was no fear or coercion, no importunity, or even an appeal to the affections.  The ground upon which courts of equity grant relief in such cases is that one party, by improper means and practice, has gained an unconscionable advantage over another.  "It must amount to force or coercion destroying free agency."  *Conley v. Nailor*, 118 U. S. 127; *Dunlap v. Robinson*, 28 Ala. 100; *Mooney v. Olsen*, 22 Kan. 69.  Here both elements are lacking.  There were no improper means or practices used, and no showing of an unconscionable advantage.  Admit that the mother was old, infirm, and weak-minded.  As said in *Dailey v. Kastell*, 56 Wis. 444, on page 453: "It is not unlawful to influence a weak-minded person to do that which is just and for the best good of such person.  Such influence is not undue,— in other words, is not fraudulent,— and does not necessarily

vitiate the act produced by it." The mother had a good memory, understood what was being done, and was not deceived. But we need not prolong the discussion.

The plaintiffs' case fails upon both the grounds suggested.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.