PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff and Appellant, vs. WETZEL and others, Defendants (WASHINGTON HOMES ASSOCIATION, Respondent).

*May 10—June 6, 1933.*

*Harvey A. Malig* of Milwaukee, for the respondent.

WICKHEM, J. The question presented in this case is whether the provisions of the instrument under which the defendant Washington Homes Association claims, are effective to create in favor of the association an equitable lien entitled to priority over the subsequent first and second mortgages. Under the authorities the instrument created a charge upon the land in the nature of a lien and amounting to an equitable lien upon the premises. In 1 Jones, Liens (3d ed.) p. 29, § 30, it is stated:

"A charge in the nature of a lien upon real as well as personal estate may be created by the express agreement of the owner, and it will be enforced in equity, not only against such owner, but also against third persons who are either volunteers, or who take the estate on which the lien is given, with notice of the stipulation."

To the same effect see 3 Pomeroy, Equity Jurisprudence (4th ed.) p. 2983, in which it is stated:

"Another species of equitable lien not growing out of contract directly between the parties arises when specific property—a lot of land, a fund of securities, or the land contained in a residuary devise—is conveyed, devised, or bequeathed subject to or charged with the payment of debts, legacies, portions, or annuities in favor of third persons given by the same instrument."

To the same effect see 3 Tiffany, Real Property (2d ed.) p. 2734; *Wier v. Simmons,* 55 Wis. 637, 13 N. W. 873; *Williams v. Williams,* 82 Wis. 393, 52 N. W. 429; *Dailey v. Kastell,* 56 Wis. 444, 14 N. W. 635.

Plaintiff contends that the instrument itself provides that the charges shall be paid annually in advance on the 31st of December of each and every year, *on which date such charge or assessment for the ensuing year shall become a lien upon the land and so continue until fully paid.* It is argued that this indicates that there was no intention to create a lien except for such portions as had actually been assessed in any given year, and that by the terms of the contract the lien for each annual instalment only attached

at the time of the assessment on the 31st of December. This construction would make the lien of the first and second mortgages superior in point of time to that of the Homes Association. This is entirely too narrow a construction to put upon the instrument. The instrument provides in other portions that the land shall be conveyed subject to this charge. It requires that instruments of conveyance contain appropriate reference to the charge, and a proviso that the conveyance is made subject to it. In another portion of the instrument it is provided that this charge shall, with the consent in writing of the Washington Highlands Company, be subsequent to the lien of the mortgage. All of these provisions clearly indicate an intention to make this a present charge or burden upon the land which, in the absence of a written waiver, shall have priority over all liens subsequent in time.

The provision that the assessment for any given year shall be paid annually in advance on the 31st day of December, and become a lien upon that date, is not inconsistent with such an intention. As a practical matter the property could only operate as a security for or be sold to satisfy assessments actually made, and in that sense a lien would come into being on the date of a particular assessment. This is all that was meant by the provision in question. The original grantors very carefully preserved the right, as against all subsequent transferees or mortgagees, to subject the land to the charge or burden of future assessments, the lien of which would be superior to those of subsequent mortgages. The intention thus to create a charge upon the land superior to all subsequent liens being evident from the foregoing, it is considered that those taking with notice of the charge, take subject to it. In 2 Pomeroy, Equity Jurisprudence (4th ed.) p. 1386, it is stated:

"Notice, although a collateral incident, is thus perhaps the most powerful element in creating a superiority, and in disturbing an order of priority which would otherwise have

existed. It may destroy the precedence which a legal estate ordinarily has over an equitable one; it may operate as well between legal and equitable estates in the same thing as between successive estates or interests which are purely equitable."

See, also, *Dailey v. Kastell,* 56 Wis. 444, 14 N. W. 635, in which land was conveyed on consideration of a promise by the grantee to support the grantor and her son during their respective lives. It was held that a subsequent mortgagee of the lands, who was chargeable with notice of the agreement creating the charge, took subject to the charge or lien, which was held to be paramount to the mortgage.

From the foregoing it is concluded that the disposition by the trial court was correct.

*By the Court.*—Judgment affirmed.