Federal Compress & Warehouse Company *v*. Hall.

4-7732                                                     189 S. W. 2d 922

Opinion delivered November 5, 1945.

*Herbert Gannaway, C. M. Buck* and *J. G. Sudbury,* for appellant.

*Reid & Evrard,* for appellee.

Millwee, J. Appellee, C. H. Hall, brought this action alleging that prior to June, 1940, he was employed by appellant as superintendent of its plant at Blytheville, Arkansas, and while so employed he received accidental injuries which forced him to retire from such employment; that under a verbal contract entered into by the parties at the time of appellee's retirement, appellant agreed for a valuable consideration to pay appellee $200 per month for the remainder of his life. It was further alleged that payments were regularly made to appellee under the contract from July 1, 1940, until January 1, 1944, when appellant refused to make further pay-

ments. Judgment was prayed for payments which had accrued at the time of the filing of the suit and which might accrue up to the date of trial, at the rate of $200 per month with interest.

In response to appellant's motion to make the complaint more definite, appellee filed an amendment alleging that he sustained injuries to his back in October, 1937, by slipping on some mud which certain employees of the plant had negligently permitted to accumulate on a platform to a railroad car, over which it was necessary for appellee to walk, causing appellee to fall a distance of five feet to the rails of the track. In the amendment to the complaint it was also alleged: "that in consideration of the action of defendant in contracting and agreeing with him that it would pay him the sum of $200 per month for the remainder of his life, plaintiff was induced to and did forego any effort to assert any claim for compensation for the damages sustained by him as a result of the injury herein mentioned, and his action in so foregoing the assertion of any such claim was the valuable consideration referred to in the original complaint in this cause."

In its answer, appellant denied that appellee received accidental injuries and denied that it had agreed to pay appellee $200 a month for the remainder of his life. Appellant admitted that it had paid appellee $200 a month until January 1, 1944, and stated that it was under no obligation to pay appellee after said date and was not indebted to appellee in any sum. Trial to a jury resulted in a verdict and judgment for appellee in the sum of $2,486.40, representing 12 monthly payments with interest.

The first contention of appellant is that the trial court erred in refusing to direct a verdict in its favor at the conclusion of the testimony of appellee and at the conclusion of all the testimony. The question of the legal sufficiency of the evidence to support the verdict is thus presented. If the testimony, when given its highest probative value in favor of appellee, fails to disclose any

substantial evidence to support the verdict, appellant's contention must prevail.

Appellee came to Blytheville in 1923 as superintendent of appellant's plant and served in this capacity until his retirement in June, 1940. The record discloses that he was an efficient and faithful superintendent, and that the business of appellant prospered under his management. Appellee's son, Sheldon Hall, lived with his father and was also employed at the compress during the time his father was superintendent. He succeeded his father as superintendent of the plant upon the latter's retirement.

According to the testimony of Sheldon Hall, appellee fell from a platform between some box cars and broke two or three ribs and injured his back during the latter part of the time he was employed as superintendent. Appellee continued to work until his retirement on June 1, 1940. A short time before appellee quit work Sheldon Hall was present at a conference with appellee, R. L. Taylor, chairman of the board of appellant company, and Binford Hester, president of the company, in Memphis, Tennessee. When asked to state the substance of the conversation between appellee and R. L. Taylor at that conference, witness replied: ''Well, there was agreed that Daddy would be paid $200 a month for his leaving there. When he left he asked them—he didn't ask for the payment, they voluntarily gave it to him, and he said, asked them, 'How will this be?,' and he said, 'Until you are able to come back to work or from there on out.' That was the meaning of the conversation.''

After the witness had succeeded his father as superintendent he received a letter from R. L. Taylor, dated June 19, 1940, which contained the following instructions: ''Beginning with July 1st, you will send Mr. C. H. Hall check first of every month for $200. Charge to salary account in the usual way unless he prefers to have it charged out otherwise.'' The payments were still being made when Sheldon Hall left the employment of appel-

lant in September, 1943, to take a job with another company.

Appellee testified that he was injured by a fall between two railroad cars at appellant's plant in 1937, but continued to work. In response to questions as to whether or not any demand was made for compensation as a result of his injuries, appellee gave the following testimony: "Q. Did you make any formal demand on them at that time for any compensation or anything of the sort? A. No, sir. Q. Did you report the fact that you had been injured? A. Well, I didn't make a formal report. I made a note of it, and later or after this difference came up I went to the compress to get that and found that at that time a majority of the records during my period with them had been destroyed. Q. You said you made a note of it. On what? A. The daily report. Q. The daily report? A. Yes, sir. Q. Was that a report that you sent in anywhere? A. To the general office in Memphis."

In May, 1940, appellee received a letter from R. L. Taylor stating that he had been informed by Sheldon Hall that appellee was still having some trouble with his back. In this letter Taylor insisted that appellee draw a check for $500 and accept it as a bonus and go immediately to a famous clinic which Taylor had patronized, and which he had recommended to his friends and other employees of the company. About two days later appellee went with his son to Memphis where they had a conference with Taylor and Hester in the general office of appellant. When asked to relate the conversation, appellee gave the following answer: "Well, I had phoned before going over to be sure that I could see Mr. Taylor, told him I had something I wanted to discuss with him. When I got over there he was in his office and we had just a general conversation for a short while and I told Mr. Taylor that I was wanting to quit, that my condition had gotten to where it was hard on me and I didn't think that I could give the service that I had been giving to my duties and attention to them, and he said, 'Why

you mustn't do that, we don't want you to,' and I told him I didn't really want to either, but on account of my health and for the company there that I thought it best, and he says, 'Well, we don't want you to, but we have got two propositions to make you, Charlie. One is to take a year's salary, a year's living, get to feeling better and come back to work, or you can retire permanently. We will give you $200 a month.' And I said, 'How long will that continue,' and he says, 'From now out,' and I says, 'From now out—does that mean for the rest of my life?', and he says, 'It does,' and he says, 'You have made me more money than all the compresses in Memphis combined.' Says 'I don't want it said about me that that old————of a————got rich on the work or effort of someone working for me and then I just turned them out,' and he also said that 'I am going to make this of record at the next meeting of our executive committee so that when I get out there will be no doubt about you getting it,' and the reorganization or some other things that he explained to me about the company.''

Appellee further testified that he had lived in Loveland, Colorado, since his retirement and received the last check from appellant in December, 1943. He was 52 years old at the time he was injured in 1937 and knew that appellant carried liability insurance on its employees, but made no report of his injury to the insurance carrier. The checks he received were charged as salary and social security payments were deducted from each check. He received the first notice about Christmas, 1943, that the $200 monthly checks would be stopped. This notice was received in a letter from R. L. Taylor in which he stated that, when appellee left the employment of the company, Taylor felt that appellee's advice would be valuable to his son as the new manager, and he (Taylor) had recommended a salary for appellee, but since the son had left the company, appellee could be of no further service and Taylor had recommended discontinuance of the salary payments.

In reply to this letter appellee expressed his disappointment at Taylor's action and asked for reconsideration of the matter. In this letter appellee said: "You will recall that you told me that the payments of $200 per month to be made to me were because of my loyalty and services to the company and were to continue for the rest of my life. . . ." Other letters passed between Taylor and appellee, and in a letter written by appellee on February 5, 1944, he stated: "Yours of January 20th did not state definitely that the monthly payments to me were going to be stopped, and I am surprised that I have not received check for January, as I have told you both in letter and talking to you, that my back injury and health keep me from going back to work and that our future living conditions depend almost entirely on the half retirement pay that you told me would continue for the rest of my life. . . ."

Other testimony was given by appellee pertinent to the alleged agreement as follows: "Q. Mr. Hall, prior to the time you had this conversation at Memphis at which the agreement was made about this $200, did Mr. R. L. Taylor know you had received an injury at the plant? A. Yes, sir. Q. What, if any connection, did that fact, the fact of your having received an injury, have with the making of this agreement? A. That was the foundation for the whole thing. . . . Q. Was there any discussion of the connection of this between you and Mr. Taylor? A. Well, that was my reason for resigning, that the injury had made my physical condition where I couldn't fool the boss." Appellee also testified that he would have brought suit for the injury if some agreement had not been reached for compensation.

The moving consideration for the action of appellant in contracting to pay appellee $200 per month for the remainder of his life is alleged to be that appellee was induced to and did forego any effort to assert any claim for compensation for the damages sustained by him as a result of his injuries. An agreement not to exercise a legal right is a valid consideration to support a contract.

There are numerous decisions of this court holding that forbearance to institute legal proceedings for a time on an asserted claim, or to refrain therefrom altogether, is sufficient consideration to support a new obligation. It is also well settled that an agreement for the compromise of a disputed claim, even one which is in fact without merit, constitutes a sufficient consideration for a new promise. *Matthews* v. *Morris,* 31 Ark. 222; *Willingham* v. *Jordan,* 75 Ark. 266, 87 S. W. 424; *Fender* v. *Helterbrandt,* 101 Ark. 335, 142 S. W. 184; *Lay* v. *Brown,* 106 Ark. 1, 151 S. W. 1001; *Brinkley Car Works & Mfg. Co.* v. *Cook,* 110 Ark. 325, 161 S. W. 1065; *Jonesboro Hardware Co.* v. *Western Tie & Timber Co.,* 134 Ark. 543, 204 S. W. 418. The surrender of, or forbearance to prosecute, a claim for damages for personal injuries is a sufficient consideration. *Gerard B. Lambert Co.* v. *Fleming,* 169 Ark. 532, 275 S. W. 912; 17 C. J. S., p. 460; Annotation 57 A. L. R. 279. It is also well settled that mere forbearance from exercising a legal right, without any request to forbear, or circumstances from which an agreement to forbear may be implied, is not a consideration which will support a promise. 12 Am. Jur. 578-79; Annotation 74 A. L. R. 293.

The controlling question in this case is: Did appellee, at appellant's request, refrain from the exercise of a legal right to assert or prosecute a claim for damages for personal injuries pursuant to and in consideration of appellant's promise to pay him $200 per month the remainder of his life? The testimony on behalf of appellee has been reviewed in considerable detail. It is the opinion of the majority that when such testimony is viewed in the light most favorable to appellee, there is no substantial evidence to support the verdict of the jury on this question. It may be pointed out that there was testimony of an injury to appellee in 1937, although there was no proof of appellant's liability therefor. But in none of the testimony is it disclosed that appellee placed any blame on appellant for his injury or that he ever actually made or asserted any claim against appellant for such injuries.

While he testified that R. L. Taylor knew he had received an injury, and that the injury was the foundation of the agreement, when pressed with the question as to what connection his injury had with the discussion with Taylor in making the agreement, appellee simply stated that the injury was the reason for his resignation, and not that he asserted any claim against appellant. After the payments had been stopped, the letters of appellee show that he regarded the payments as being made for his loyalty and services to appellant in line with the company's policy of half-pay on retirement. It is true, he mentions his injury in the letters in explanation of his inability to go back to work, but no contention is made in the letters that the $200 per month payments were made in settlement of a claim for damages.

Sheldon Hall, in recounting the conversation which is alleged to have formed the basis of the agreement, makes no mention of an injury or claim for damages. On the contrary, this witness testified that his father asked for no payment and the clear import of his testimony is that the promise to pay appellee $200 per month was a voluntary gift.

The burden was upon appellee to establish a valid contract for the payment of $200 per month for the term of his life. The only valid consideration for such contract which was urged and relied upon by appellee was his agreement to forbear prosecution of a claim for personal injuries against appellant. Since the conclusion is reached that there was a lack of substantial evidence to establish a valid consideration in support of the alleged contract, it follows that the learned trial judge erred in refusing to direct a verdict in favor of appellant. It, therefore, becomes unnecessary to discuss other interesting questions presented in the briefs.

The judgment must, therefore, be reversed, and, as the cause appears to have been fully developed, it will be dismissed.