NATIONAL BEDDING & FURNITURE
INDUSTRIES, INC. ET AL *v.* DREW M. CLARK ET AL

5-5889                                       481 S.W. 2d 690

Opinion delivered June 12, 1972
[Rehearing denied July 17, 1972.]

*C. W. Knauts,* for appellants.

*Burris & Berry,* for appellees.

CARLETON HARRIS, Chief Justice. This litigation relates to the question whether a mortgagee or judgment creditors are entitled to the proceeds of an insurance policy taken out by the mortgagor. In August, 1967, Drew Clark and Doris Clark, appellees herein, loaned their son, B. G. Clark, the sum of $14,615.53, and in addition co-signed a promissory note in favor of the Corning Bank. Young Clark used these funds to purchase an existing furniture store business situated in Corning. In connection with the loan, Clark executed to his parents a promissory note, and a financing statement and security agreement giving to them a first and paramount security interest in the furniture store and inventory assets. Thereafter a financing statement was filed in the county of the debtors' residence and with the Arkansas Secretary of State as a matter of perfecting the Clarks' security interest. B. G. Clark operated the store until January 6, 1971, when the building and all contents were destroyed by fire. The destroyed property was covered by insurance in the sum of $25,000 which the insurance company, Maryland Casualty, interpleaded into the registry of the court. The policy contained a loss payable clause in favor of Hupp Credit Company, and this company subsequently received payment of the indebtedness due it under a court decree of July 29, 1971, and is not a party to the present litigation. Appellants, nine judgment

creditors of B. G. Clark, received an assignment on January 27, 1971, from B. G. Clark to the insurance proceeds in the total amount of $6,155.22 and Maryland Casualty Company was so notified. Following the filing of the bill of interpleader by Maryland, both appellants and appellees, among others, filed pleadings contending for the balance of the money, $15,798.92. The claim of appellees is based on a provision in the mortgage (security agreement) whereby young Clark agreed as follows:

> "7. The Debtor will keep the collateral insured for the benefit of the Secured Party against fire, theft, (including extended coverage), collision, and such other hazards as the Secured Party may from time to time require, in such form and in such companies as the Secured Party shall approve and, if requested, will deliver the insurance policies to the Secured Party. The Debtor appoints the Secured Party the attorney for the Debtor in obtaining, adjusting and cancelling such insurance and endorsing settlement drafts and hereby assigns to the Secured Party all sums which become payable under such insurance, including return premiums and dividends, as additional security hereunder."

Appellants depend upon the assignment heretofore-mentioned. On trial, the court ordered disposition of the proceeds, and as between mortgagees and judgment creditors, held for appellees Clark, such holding being based on the fact that their security instruments were prior in time to the assignment of appellants.[1] From the decree so entered, appellants bring this appeal.

Let it first be stated that the Uniform Commercial Code does not apply to this litigation, for under specific provisions of Ark. Stat. Ann. § 85-9-104 (Add. 1961) a transfer of an interest or claim in or under any policy of insurance is excluded from the provisions of the code.

---

[1]Disposition of the proceeds to other parties whom the court found to hold prior rights to proceeds is not questioned, and this appeal relates only to issues between the Clarks and the judgment creditors. The amount of money left for disposition was not sufficient to cover the amount due the Clarks.

The priority provisions found in chapter 9 are only applicable to conflicting security interests in collateral. While appellees did have a perfected security interest in the inventory, as collateral for the note, the appellants only had a contractual right by assignment. Since the dispute as to priority is not between conflicting security interests, Ark. Stat. Ann. § 85-9-301 et seq (Add. 1961) do not apply.

Of course as pointed out in 46 C.J.S. Insurance § 1140 p. 19, which deals with insurance proceeds, the general rule is that insurance policies are personal contracts between the insured and the insurer, and not contracts running with the property. This view was expressed by the court in *Langford* v. *Searcy College,* 73 Ark. 211, 83 S.W. 994, where we held that a purchaser of realty was not allowed to sue upon an insurance policy issued to the vendor. Accordingly, generally speaking, it may be said that insurance proceeds are payable only to the person whose interest is covered by the policy, provided he has an insurable interest at the time of making the contract and at the time of the loss. However, in 46 C.J.S. § 1147 p. 27, it is stated:

> "Where the insurance is taken out by the mortgagor for the benefit of the mortgagee, or is made payable to the mortgagee as his interest may appear, in the absence of a waiver or agreement between the mortgagor and the mortgagee, the mortgagee has a prior or superior right to the proceeds of the policy, to the extent of the mortgage debt. *** Under a standard mortgage clause the rights of the mortgagee are not affected by any act done by insured, and, where such policy is issued in pursuance of a stipulation therefor in the mortgage, the mortgagee is entitled to the proceeds, although he was not informed of the issuance of the policy and had no knowledge thereof until after the fire."

It is further stated under sub-section b:

> "Regardless of whether or not the policy is made payable to the mortgagee, if it is procured by the

mortgagor under a covenant or binding agreement to insure for the mortgagee's benefit, the proceeds recovered by the mortgagor are held in trust for the mortgagee, who is deemed to have an equitable lien on the proceeds of the insurance for the satisfaction of his mortgage."

The above authority is cited because appellants argue that there was no loss payable clause for the benefit of the mortgagees, but only for Hupp Credit Company, and that the insurance was not obtained by the mortgagor, for their benefit; that in fact, such insurance was not obtained until over three years after the execution of the mortgage. We do not agree with the argument so advanced. In the Iowa case of *Winneshiek Mutual Insurance Association* v. *Roach*, 132 N.W. 2d 436, in an opinion by Chief Justice Garfield, the Supreme Court said:

"The rule is that a mere mortgagee has no interest in an insurance policy issued to the mortgagor upon the mortgaged property unless such interest be created by some agreement between mortgagor and mortgagee in relation thereto. In the absence of such an agreement the insurance contract is strictly personal between the insurer and its patron. As a rule, however, the mortgagee has an equitable lien on proceeds of a fire insurance policy procured by the mortgagor pursuant to an agreement to insure for the mortgagee's benefit, although the policy is not made payable to the mortgagee."

The court added that it was immaterial whether the policy existed at the time the mortgage was executed, or was subsequently obtained.

In the Texas case of *Abilene White Truck Company* v. *Petrey*, 384 S.W. 2d 211, the Court of Civil Appeals of Texas (Fort Worth) held likewise, stating:

"Under the record in this case Petrey was charged with the duty of obtaining a policy of insurance with loss payable to the Abilene White Truck Company. The latter had a prior right to the proceeds of such

policy when the property covered was destroyed while the debt was unpaid *even though Petrey failed to provide that the loss be payable to it. This right was not affected by Petrey's subsequent attempt to assign the proceeds of the policy* [our emphasis]. Thus the assignees acquired no better right than that of Petrey. The proceeds in question are subject to an equitable lien in favor of the truck company."

Writ of error was applied for but was denied by the Supreme Court of Texas which found no reversible error.

In the Florida case of *Sumlin* v. *Colonial Fire Underwriters, Etc.,* 27 So. 2d 730, the Supreme Court stated:

"This court is committed to the doctrine that if a mortgagor covenants to protect his mortgagee the latter thereby is clothed with a lien on the policy to the extent of the mortgagee's interest, whether the policy carried a loss payable clause or not."

Appellants argue that paragraph 7 of the mortgage, heretofore quoted in full, does not call for immediate obtainal of the insurance, the agreement stating that such insurance should be obtained as the secured party "may from time to time require" and appellants italicize this phrase. However, it will be noted that this phrase only refers to "such *other* [our emphasis] hazards as the Secured Party" may require and that the agreement to keep the collateral insured against fire and theft is absolute. Not only does the instrument call for fire coverage on the collateral but the provision further states that the mortgagor *"Hereby assigns to the Secured Party all sums which become payable under such insurance* [our emphasis]."

It will be remembered that the assignment for the benefit of the judgment creditors, appellants herein, was not executed until three weeks after the fire had destroyed the collateral. We agree with the learned chancellor that

the claim of appellees is entitled to priority over the claim of appellants.

Affirmed.

SMITH, BROWN and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. As I understand this case, the result actually turns upon whether appellees had an equitable lien on the insurance proceeds and, if so, whether it was prior and superior to the rights of appellants. I do not think they did. They could not have had any more than an equitable lien, since they were not named in the loss payable clause. The chancery court's decree was based, at least in part, upon a finding that the insurance money represented the mortgaged property and that there was, in effect, an equitable conversion of the mortgaged property. This is not entirely consistent with our decisions. See *Whitley* v. *Irwin,* 250 Ark. 543, 465 S.W. 2d 906; *Langford* v. *Searcy College,* 73 Ark. 211, 83 S.W. 944; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S.W. 88; *National Union Fire Ins. Co.* v. *Henry,* 181 Ark. 637, 27 S.W. 2d 786. We have even held that a mortgagee who effects insurance upon mortgaged property at his own expense and for his own benefit is entitled to the proceeds of the insurance without applying the proceeds to the mortgage debt. *Ponder* v. *Gibson-Homans Co.,* 166 Ark. 591, 266 S.W. 682. It is true that we have said that the proceeds of insurance procured in compliance with the terms of a mortgage and *collected* by the mortgagee represented the insured property and constituted an equitable conversion of it, so that the mortgagee was entitled to apply the insurance proceeds to the mortgagor's debt as he saw fit rather than in a manner which would benefit an endorser of some of the notes secured by the mortgage. *Kissire* v. *Plunkett-Jarrell Grocer Co.,* 103 Ark. 473, 145 S.W. 567. The same principles were followed in *Sharp* v. *Pease,* 193 Ark. 352, 99 S.W. 2d 588. In that case, however, the mortgagor and the mortgagor's successor in interest had failed to have a loss payable clause inserted for the benefit of the mortgagee, but the mortgage contained a specific provision that the absence of a loss payable clause or an assign-

ment of the policy taken out pursuant to the terms of the mortgage would not affect the right of the mortgagee to the policy proceeds. The rights of third parties were in nowise involved there, because the litigation was between the mortgagee and the administrator of the estate of a purchaser from the mortgagor, and both the mortgagor and the purchaser had contracted to keep the property insured for the benefit of the mortgagee. The court based its holding in favor of the mortgagee upon the premise that had the purchaser lived and *collected the insurance herself* she could have been held accountable to the mortgagee. The proceeds were actually paid to her administrator.

On January 27, 1971, Gale Clark executed an assignment of the insurance proceeds in consideration of the assignees' withholding of further legal proceedings to collect certain judgments. The assignment was to Trantham and Knauts for the use and benefit of the following in the sums set opposite their names:

National Bedding & Furniture Industries, Inc.

| | |
|---|---:|
| | $3,571.87 |
| Forsyth Williams Company | 270.49 |
| Mid-South Bedding Company | 662.62 |
| Authentic Furniture Products | 126.25 |
| William R. Moore, Inc. | 399.97 |
| Cooke's Mfg. Co., Inc. | 435.16 |
| Rawleigh, Moses & Co., Inc. | 209.94 |
| Lampcraft Industries, Inc. | 118.44 |
| Hi-Lo Ind., Inc. | 360.48 |
| Total Assignment | $6,155.22 |

Notice of this assignment was given to Maryland Casualty Company.

A lien on real or personal estate will be enforced in equity against the owner of the property and against anyone who afterwards takes the estate with notice of it, on the basis that the lien is in the nature of a trust which equity will compel the holder of the legal title to perform. *Talieferro, Executor* v. *Barnett*, 37 Ark. 511. It might well be that as between the son and the parents

there was an enforceable lien against the insurance proceeds. But it does not follow that the lien is enforceable against the assignees who withheld collection procedures in consideration of the assignment.

The equitable lien actually depends upon the insurance having been procured pursuant to the covenant or agreement as to insurance in the security agreement. I submit that the evidence clearly preponderates against such a finding. The policy was not issued until October 13, 1970, more than three years after the execution of the security agreement. Even then appellees were not mentioned in the loss payable clause, which was in favor of Hupp Credit Corporation and GAC Corporation. The debt to the former was paid out of the policy proceeds. The debt to the latter must have been paid before the fire. There was no evidence that the policy was taken out pursuant to the security agreement or that the parents ever knew about it or the insurance company about them. The action of Clark in making the assignment relied upon by appellants is certainly inconsistent with the theory that the policy was obtained in compliance with the security agreement. Certainly there is no reason to believe that, by doing so, he intended to defraud his parents who had furnished original financing for his business venture. Other pertinent facts are that there is no evidence that the parents ever requested the delivery of any insurance policy, or that they availed themselves of the right to obtain insurance as the son's agent, as they had a right to do under the security agreement. As a matter of fact, there is nothing in the record to show that there was no other insurance which inured to the benefit of appellees.

In *Stearns* v. *Quincy Mutual Life Ins. Co.*, 124 Mass. 61, 26 Am. Rep. 647 (1878), the court held that a mortgagee was not entitled to recover the proceeds of a fire insurance policy procured by the mortgagor, even though the terms of the mortgage required the mortgagor to keep the property insured against fire for the benefit of the mortgagee. The insurance company issued the policy without any knowledge of the terms of the mortgage, although it knew that there was a mortgage in favor of

the mortgagee. There was neither a loss payable clause nor an assignment of the policy or of the claim for loss. It was not shown that the mortgagee had any knowledge of the insurance until after the loss. The court fully recognized the doctrine regarding equitable liens in favor of a mortgagee on the insurance policy and its proceeds whenever the mortgagor procures insurance with the intention of performing his promise to obtain insurance for the benefit of the mortgagee. The court said:

> In all the cases found, which support the claim of the mortgagee to insurance obtained by the mortgagor in his own name, the facts were such as to justify the conclusion, by estoppel or otherwise, that such insurance was obtained by the latter as the agent of, or with intent to perform the obligation he had assumed to, the former. * * *

> In the case at bar, the facts agreed do not justify the inference that this policy was obtained with the intention, at the time, to perform the condition in the mortgage. That condition required insurance on the dwelling-house only, in a sum not less than $3,200, for the benefit of the mortgagee, at such offices in Massachusetts as he should approve. This insurance was obtained without his approval or knowledge, more than a year after the mortgage was made, for $2,000 in all, $500 of the same being on the mortgagor's personal property not covered by the mortgage, and only $1,500 on the house. Both mortgagor and mortgagee had an insurable interest in the property, and each had the right to protect himself from loss by his own contract of insurance. So far as these facts go, the inference is that Stearns intended to insure only his own interest in the house as well as in the personal property. And the important element is lacking which is necessary to establish the claim of Andrews.

The Massachusetts court has pointed up the exact reason why the equitable lien doctrine has no application here.

Even if an equitable lien existed, it would not take priority over an assignment unless the assignee had no-

tice of the existence of the lien. *Maryland Casualty Co. v. Lincoln Bank & Trust Co.,* 40 F. Supp. 782 (D. C. Ky. 1941); *Stepp* v. *McAdams,* 88 F. 2d 925 (9th Cir. 1937); *Prudential Ins. Co. of America* v. *Wetzel,* 212 Wis. 100, 248 N.W. 791 (1933). See also, *Beebe Stave Co.* v. *Austin,* 92 Ark. 248, 122 S.W. 482, 135 Am. St. Rep. 172. I submit that the appellants are not chargeable with either actual or constructive notice.

Appellants gave valuable consideration for the assignment of the proceeds of the policy to them, in the form of forbearance of collection procedures, so they are not in the position of one claiming under a voluntary conveyance or transfer. *Federal Compress & Warehouse Co.* v. *Hall,* 209 Ark. 274, 189 S.W. 2d 922. They had no notice of the alleged equitable lien. The only basis upon which appellants could have been charged with any notice is the security agreement itself. They certainly were not charged with notice of the "assignment" of insurance proceeds in the security agreement because that is a matter specifically excluded from the operation of the code. Ark. Stat. Ann. § 85-9-104 (Add. 1961). Consequently, filing under the code cannot constitute notice as to the assignment even of insurance obtained in compliance with this security agreement. It could only constitute notice that appellees had a perfected security interest in the collateral. Furthermore, the proceeds of the insurance policy do not constitute "proceeds" of the collateral which the lien of the perfected security interest would reach. Ark. Stat. Ann. § 85-9-306 (Add. 1961); 4 Anderson, Uniform Commercial Code (2d Ed. 1971) 308; *Quigley* v. *Caron,* Me., 247 A. 2d 94 (1968); *Universal CIT Corp.* v. *Prudential Invest. Corp.,* 101 R. I. 287, 222 A. 2d 571 (1966). The holding in the case just cited is premised at least in substantial part upon the rule so often recognized by our decisions, i.e., that an insurance policy is a personal contract which does not attach to or run with the property involved.[1] The Rhode Island court also held that an involuntary conversion of property (loss by demolishment in an accident) cannot

[1]See *Whitley* v. *Irwin,* supra; *Langford* v. *Searcy College,* supra; *McDonald* v. *Rankin,* supra; and *National Union Fire Ins. Co.* v. *Henry,* supra.

be a "sale, exchange, collection or other such disposition" under the code. In that case, a creditor, who was holder of an assignment made after the loss, prevailed over the holder of a security interest.

Clearly, appellants are not chargeable with either actual or constructive notice of an equitable lien.

I respectfully submit that the cases cited by the majority do not support its result, and are clearly not contrary to my position. In *Winneshiek Mutual Insurance Assn.* v. *Roach,* 257 Iowa 354, 132 N.W. 2d 436 (1965), the court only held that the mortgagee's pleading sufficiently alleged that the policy in question was taken out pursuant to agreement with the mortgagor and that a mortgagee clause furnished actually was intended to apply to the policy involved. In *Abilene Truck Company* v. *Petrey,* 384 S.W. 2d 211 (Tex. Civ. App. 1964), the only question involved was the effect of the absence of a loss payable clause. There is little room for doubt that the policy there was procured in compliance with the mortgage. At least no question was raised on this point. In *Sumlin* v. *Colonial Fire Underwriters,* 158 Fla. 95, 27 So. 2d 730 (1946), one policy involved was delivered by the mortgagor to the mortgagee, who had not presented it to the insurance company for endorsement and it contained no loss payable clause. Another policy had been taken out by the mortgagee without notice to the mortgagor before the delivery of the first policy. Both policies were for the insurable value of the property. The court merely affirmed a judgment requiring each insurance company to bear one-half of the loss and denying the right of the mortgagor to recover on one policy and the mortgagee on the other. I suggest that a different result probably would have been reached in this jurisdiction.

I would reverse the decree of the chancery court.

I am authorized to state that Mr. Justice George Rose Smith and Mr. Justice Brown join in this dissent.