LANGFORD *v.* SEARCY COLLEGE.

Opinion delivered December 3, 1904.

1. DEED TO LAND—WHERE UNCONDITIONAL.—A conveyance of land in fee simple without conditions on its face passes the title unfettered by limitations, although the grantees had previously declared their intention

to continue to use the property for school purposes, and the belief
in such declaration on the part of others interested in the property
constituted in part the inducement for allowing the grantees to buy at
the price agreed upon.   (Page 217.)

2.   FIRE INSURANCE POLICY—WHO MAY RECOVER.—A policy of fire insurance
is a personal contract, upon which the insured alone can recover; the
amount collected  thereon being in no  sense  the  proceeds of  the
property destroyed by fire.  (Page 218.)

Appeal from White Chancery Court.

D. H. CANTRELL, Special Chancellor.

Reversed.

*J. W. Crawford* and *J. M. & J. G. Taylor,* for appellants.

The court erred in admitting parol evidence as to the terms
and conditions upon which the property was sold to defendants.
21 Ark. 440; 170 U. S. 397; 129 Fed. 84; 47 S. E. 287; Browne,
St. Fr. § 511; 1 Perry, Tr. § 85; 19 Ark. 23; 42 Ark. 503; 50
Ark. 76 and cases cited; 69 Ind. 419; 57 Ark. 637; 94 Ia. 239
and cases cited; 4 W. & S. (Pa.) 149; 7 Casey (Pa.) 371; 1
W. & S. 376; 102 Mass. 35.  Part performance does not take
such a case out of the statute of frauds. 46 Ark. 80; 54 Fed.
924-5.  Nor does the fact that this particular section of the
statute of frauds is not pleaded in the answer prevent objection
to the testimony. 1 Perry, Tr. § 85; 19·Ark. 23; Browne, St. Fr.
§ § 510, 511; 34 Minn. 274; 32 Minn. 482; 19 Ark. 34; 164 U. S,
418; 94 U. S. 404.  Fraudulent representations to avoid a con-
tract must have induced the party alleging same to part with
his property or have in some way influenced him to his detri-
ment. 43 Pa. Co. Rep. ʽ570; Pom. Eq. § 921; 96 Ala. 289; 86
Ga. 38; 3 Story, 181, 290-293; 20 Ind. 62; 6 Mon. 24.  Subse-
quent fraud will not raise a trust.  42 Ark. 503; 8 Cas. 371; 1
Perry, Tr. § § 6, 126; Browne, St. F. § 89; 2 Wash. C. C. 398,
s. c. 1 Am. & Eng. Dec. Eq. 529; 4 Russ. 345; 150 U. S. 524.
The defendants, by carrying on the school until its destruction by
fire, fully performed their contract, for the agreement to carry
on the college was a condition subsequent.  64 Ia. 152-3; 2 N. Y.
389; 31 Mich. 43; 69 Mass. 516; 16 Pick. 183; 136 U. S. 393;
7 Wall. 290; 28 Ia. 360; 89 Mass. (7 Allen) 129; 3 Gray, 516;

2 Metc. 180. Appellees had no right to recover the insurance money. 1 May, Ins. § 6; 2 Cush. 412; 4 Red. (Me.) 496; 1 Jones, Mortg. § § 396, 397, 420, 421; 90 Ill. 121; 12 How. 139, 157; 5 Gray, 549; 103 Mass. 219, 221; 80 Ill. 532; 70 N. Y. 19; 71 Me. 507; 45 S. W. 462; 7 Cush. 1; 5 Gray, 401; 9 Allen, 123; 17 Am. & Eng. Ry. Cas. 35; 1 May, Ins. § 83; 32 Ill. 221; 107 Mass. 377. Parol evidence was not admissible to show the consideration of the purchase; and the court erred in decreeing a resulting trust. 1 Perry, Tr. § § 76, 134-5; 45 Ark. 481; 4 Fed. 446; 17 Wall. 44; Br. St. Fr. § § 89, 94, 96; 3 Pom. Eq. § 1212; 1 Perry, Tr. § 171; 2 Ib. § § 554, 485, 486; 98 Pa. St. 351. There was no charitable trust. 1 Perry. Tr. § § 88-9; 9 Allen, 283; 2 Perry, Tr. 709, 710, 711; 3 Gray, 1; 19 N. E. 572.

*S. Brundidge, Jr.,* for appellees.

Opinion of special chancellor quoted upon the following points:

(1.) A resulting trust should be declared in favor of appellees. 19 N. E. 586; 26 Ark. 250; Bisp. Eq. § § 63, 91, 121, 122, 124.

(2.) The property in controversy must be governed by the rules applicable to charitable trusts, and treated as such. 19 N. E. 586; 17 How. 384; 107 U. S. 163; 2 Perry, Tr. 687, 699.

(3.) The obligation to maintain and operate the school was a condition precedent, and the following cases cited by defendants are not applicable against this theory: 136 U. S. 403; 7 Wall. 390; 100 U. S. 548; 86 Ind. 375.

(4) Parol evidence as to the consideration was admissible. 55 Ark. 112; 20 Ark. 216; 13 Ark. 112; 46 Ark. 128; Bisp. Eq. 91; 9 Ark. 518; 54 Ark. 195; 11 Ark. 82; 40 Ark. 106; 48 Ark. 169.

Further, upon the proposition that appellants were trustees, see: 29 N. W. 352; 1 Perry, Tr. § 166; 130 U. S. 880; 26 Ark. 249; 13 N. E. 840; 29 N. W. 358; 19 N. E. 572; Perry, Tr. § § 186, 202, 218; 91 Ill. 295; Kerr, Fr. & Mist. 150; 93 Ill. 295; 59 Ill. 240. The statute of frauds has no application to resulting trusts, and they may be proved by parol. 21 N. E.

18; Bisp. Eq. § 231; L. R. 7 Ch. App. 469; 48 Ark. 169; 40 Ark. 106. Trustees are not bound to insure the trust property, but if they do the insurance inures to the *cestui que trust.* 1 Wood, Fire Ins. 685; 2 Perry, Tr. 11; 44 Am. Dec. 721; 47 Ark. 539.

*J. W. Crawford* and *J. M. & J. G. Taylor,* for appellant in reply.

See further on the question of trust: Perry, Tr. § § 151, 162; 103 Mass. 487; 1 Paige, 494; Hill, Trustees, 112; 2 St. Eq. 1197; 29 Me. 410; 36 N. H. 86; 9 Fost. 129; 5 Cush. 90; 3 Cush. 191; 14 Gray, 277; 10 Allen, 15; 104 Mass. 274; 113 Mass. 372; 2 Pom. Eq. § 1036.

BATTLE, J. On the 16th day of April, 1890, a corporation was organized according to the laws of this State, and was called "The Searcy College." Its object was to increase and promote the educational facilities of the town of Searcy by establishing and maintaining an institution of learning at that place for the education of white male persons. The capital stock of the corporation was $50,000, divided into shares of $25 each, all of which were subscribed. The corporation purchased a tract of land, containing forty acres, and built thereon a good, substantial building, and equipped and furnished it at the cost of $48,000. In establishing and maintaining an institution of learning in this building, it borrowed the sum of $7,000 to defray the expenses thereby incurred, and executed a mortgage upon the land and building to secure the payment thereof. Its board of directors leased the property to R. B. Willis and G. T. Story for the term of two years, to be used for a school. Mary E. Speers, Ida Langford, her daughter, and William H. Langford, her son-in-law, assisted them in establishing and maintaining the school. It was understood that, if the school proved to be a success, they would propose to purchase the property, and that, if they acquired it, they would continue and maintain the school as a memorial to the deceased members of their family, John B. Speers and William H. Langford, Jr. The debt incurred by the loan matured, and, before the two years of the lease expired, proceedings were instituted in the White Chancery Court to foreclose the mortgage, and the court ordered that the property be sold to pay the debt,

which was done, and A. W. Yarnell and Eugene Skillern became the purchasers; and the sale was approved by the court. This was in June or July, 1897. In December following Mrs. Speers and Mr. and Mrs. Langford proposed to buy the land and building. They represented that their object in purchasing was to continue the school and maintain it as a memorial to deceased relatives. The stockholders of the corporation, a majority of whom were citizens of Searcy and interested, believing these representations, favored the sale; and Yarnell and Skillern, doubtless influenced by their wishes, sold the property to them at and for the sum and price of $8,000, and executed to them a deed in the words and figures following:

"A. W. Yarnell and Eugene Skillern
        To                       Warranty Deed.
"Mary E. Speers, Ida S. Langford and W. H. Langford.

"Know all men by these presents: That we, A. W. Yarnell and Anna Yarnell, his wife, and Eugene Skillern and Minnie D. Skillern, his wife, of the county of White, and State of Arkansas, for and in consideration of the sum of eight thousand dollars to us in hand paid by Mary E. Speers, Ida S. Langford and W. H. Langford, of the county of Jefferson, in the State of Arkansas, the receipt whereof we do hereby acknowledge, do grant, bargain, sell and convey unto the said Mary E. Speers, Ida S. Langford and W. H. Langford, and unto their heirs and assigns, all of a certain tract of land and certain personal property situate in the county of White and State of Arkansas, towit: The northeast quarter of the northeast quarter of section 9, in township 7 north, range 7 west, containing forty acres, more or less, together with all and singular the improvements and appurtenances thereunto belonging; also all furniture, school desks, bedroom furniture, kitchen furniture, apparatus and fixtures heretofore belonging to the Searcy College, and conveyed to us by A. G. Latimer, commissioner, and now situate on said premises. To have and to hold the said land and the said personal property unto the said Mary E. Speers, Ida S. Langford and W. H. Langford, and unto their heirs and assigns forever; and we, the said A. W. Yarnell, Anna Yarnell, Eugene Skillern and Minnie D. Skillern, do covenant with the said Mary E. Speers, Ida S. Langford and William H. Langford, and with their heirs and assigns, that we are lawfully

seized in fee of said land, that it is free from all incumbrance, that we have lawful right to convey same; and that we will, and our heirs, executors and administrators shall, forever warrant and defend the title to said land and personal property against the lawful claims of all persons whomsoever. And we, Anna Yarnell and Minnie Skillern, do hereby release and relinquish unto the said Mary E. Speers, Ida S. Langford and W. H. Langford, and unto their heirs and assigns, all our right, claim or possibility of dower in and to the said land.

"Witness our hands this 29th day of September, 1897."

They continued the school, and maintained it as a memorial, as they proposed to do, and named it "Speers-Langford Military Institute." They repaired and improved the building, and with their individual means procured insurance of it against fire in their own names. They continued the school about four years, when the building was destroyed by fire, and thereafter maintained it for a short time. They collected the amounts due on the policies of the insurance of the building, amounting in the aggregate to the sum of $20,000, and threatened to convert the same to their own use, and declined to rebuild the schoolhouse destroyed by fire. The Searcy College, P. A. Robertson and others, suing for themselves as citizens of the town of Searcy and as stockholders of Searcy College, brought this suit in the White Chancery Court against them, and asked that they be declared trustees for said school; that the court appoint a suitable number of trustees for said institution; that the defendants be required to pay to them the said $20,000, * * * and to convey to them the said lands, to the end that said institution may be continued."

The court granted the relief asked for by the plaintiffs, and the defendants appealed.

Before the purchase of the lands in controversy by the appellants, the equity of redemption therein of Searcy College was foreclosed, and the legal title thereto passed to Yarnell and Skillern, who sold it to the appellants for the sum of $8,000, and absolutely and unconditionally conveyed it to them. They did not agree to pay anything more than the $8,000, or do anything more therefor. It is true that they declared their intention to continue the school then in progress as a memorial to deceased members of their

family. Upon this point W. H. Lightle, one of the plaintiffs, and a stockholder of the Searcy College, testified:

When asked, "I will ask you to state, Mr. Lightle, if it ever was intimated to the board of trustees of Searcy College, or any one representing them, that they wanted or were purchasing Searcy College property for any other purpose than solely and exclusively for the conducting of a memorial school thereon?" he answered, "Not to me or to the board at any meeting at which I was present was any intimation other than that stated in the question given me. We fully understood that was the purpose for which it was being bought by them, and there was no thought expressed by them in my presence that it would be used for any other purpose." And when asked, "I will ask you to state, as a member of the board of directors, would you have consented to the sale of the property, had you not been assured of the perpetuation of the school?" he replied: "I would not have given my consent, but would have objected very strenuously to the extent of my ability, if it had been intimated that it was to be used for any other purpose. I did not consider that it was any part of its value, but was only governed by the belief that we were gathering to our assistance in carrying on the school parties who were financially able and willing to do so." This belief and inducement to sell were based upon the fact that appellants were purchasing the property for school purposes. Were appellees disappointed? Appellants devoted the property to school purposes for about four years and until the buildings were destroyed by fire, and nothing remained except a vacant lot. The school had been pecuniarily unprofitable, and there were n oearnings or profits arising therefrom with which to rebuild. Where was the obligation to do so? Where was the fund set apart for that purpose? The evidence fails to disclose any.

There was no contract by which it was agreed that the property should be held in trust for any particular purpose. Appellants purchased it with their own money. They refused to purchase conditionally or any estate less than fee simple. Yarnell and Skillern conveyed it to them in fee simple, and covenanted with them that they, grantors, were lawfully seized in fee of the lands; that it was free from all incumbrances; that they had the right to convey the same, and that they would, and their heirs,

executors and administrators should, forever warrant and defend the title to the land and the personal property against the lawful claims of all persons whomsoever. Every stipulation necessary to free it from trusts and conditions was made by the grantors. There was no reservation, and the estate granted was unclogged and unfettered with conditions or limitations; and appellants did not hold it in trust. *Davis* v. *Jernigan, 71* Ark. 494.

Appellees not only sue for the land, but seek to recover the $20,000 collected on the policies of insurance. To this they are not entitled. The contract of insurance was a personal contract with appellants. They insured for their benefit. They paid the premiums with their own money. The contract enured to their benefit. It was a contract of indemnity against loss; it did not run with the title to the property; and the amount collected thereon was in no sense the proceeds of the property destroyed by fire. If appellants were not entitled to recover on it, no one was. The insurance companies paid to them the amount of indemnity, and no one can lawfully dispute their right thereto. *Harrison* v. *Pepper, 44* N. E. Rep. (Mass.) *222; Spalding* v. *Miller, 45* S. W. (Ky.) *462; Carroll* v. *Boston Marine Ins. Co.,* 8 Mass. 515; Kerr on Insurance, § 14, and cases cited; 1 May, Insurance (4th Ed.), § 6, and cases cited.

Reverse and remand, with instructions to dismiss complaint for want of equity.