KEYLON v. ARNOLD.

4-8461                                    209 S. W. 2d 459

Opinion delivered March 22, 1948.

P. C. *Goodwin*, for appellant.

*Billingsley & Wiley*, for appellee.

ED. F. McFADDIN, Justice.   This appeal involves certain lands in Izard county.   On October 24, 1893, S. C. Keylon contracted to buy from Joseph H. Russell the said land (consisting of 173.80 acres) for a total consideration of $360.   Keylon paid $100 cash, received a contract, took possession of the lands, and improved and cultivated a portion thereof, although he continued to live on an adjoining 40 acres which he was in the process of homesteading from the U. S. Government.   The lands here involved were never the homestead of S. C. Keylon. He died January 5, 1900, survived by his wife, Jemima E. Keylon, and two children: a boy, A. L. Keylon, then nine years of age—the present appellant—and a daughter, Gertie Keylon, whose age is unstated, and who later married the appellee, John Arnold.

After the death of S. C. Keylon it developed that Joseph H. Russell, who had contracted to sell the lands to S. C. Keylon, owned only a life estate in the lands, and

that the fee title was owned by the estate of Robert F. Russell. He was the son of Joseph H. Russell, and had died a single and unmarried man in 1890. Joseph Russell had died in 1899. The estate of Robert F. Russell was in course of administration in the Izard Probate Court; and Mrs. Jemima E. Keylon filed a petition in that estate. She alleged that her husband, S. C. Keylon, had contracted to buy the 173.80 acres from Joseph H. Russell, thinking him to be the fee owner; that the balance of principal and interest due on that contract was $288; and that Mrs. Jemima E. Keylon desired to pay that balance "out of her own funds" to the estate of Robert F. Russell, and have a deed executed to her and her heirs and assigns. She prayed that the administrator of the estate of Robert F. Russell be directed to execute such a deed to her. The Probate Court, on December 17, 1900, granted the said petition, and the administrator of the estate of Robert F. Russell executed a deed conveying the lands to "Jemima E. Keylon and her heirs and assigns" in consideration of the payment by her of the sum of $288. We are not here concerned with the validity of the said Probate Court order or proceedings.

Mrs. Jemima E. Keylon held the lands under her said deed until November 13, 1941, when she conveyed them by general warranty deed to John W. Arnold and Gertie Keylon Arnold, his wife, for the recited consideration of $1,000; and the deed was duly recorded on November 17, 1941. The real consideration was the agreement by the grantees to care for and support the grantor for the remainder of her life; and the grantees faithfully fulfilled their contract. Mrs. Jemima E. Keylon departed this life July 14, 1945, survived by her son, A. L. Keylon (appellant), and her daughter, Mrs. Gertie Keylon Arnold. Mrs. Arnold died on October 28, 1945, survived by two children, Orson Arnold and Genevieve Arnold Smith, who are appellees here, along with their father, John W. Arnold.

On January 16, 1946, A. L. Keylon filed this suit in the Izard Chancery Court. He alleged that the land (i. e., the said 173.80 acres) was owned by the heirs of S. C. Keylon, deceased, and could not be partitioned in kind,

and should be sold and the proceeds divided: one-half to A. L. Keylon, and one-half to the husband and heirs of Gertie Keylon Arnold. To this complaint John Arnold (husband of Gertie Keylon Arnold) filed answer. After denying all allegations of the complaint, he alleged that Mrs. Jemima E. Keylon, rather than S. C. Keylon, had been the owner of the lands; that Mrs. Jemima E. Keylon had conveyed the lands to John Arnold and Mrs. Gertie Arnold by entirety; and that John Arnold, as the surviving spouse, is the owner of the lands. The cause was heard by the chancery court, and resulted in a decree dismissing the complaint for want of equity; and this appeal challenges that decree.

It is at once apparent that A. L. Keylon is proceeding on the theory that S. C. Keylon had originally contracted to purchase the land; that Mrs. Jemima E. Keylon, in acquiring the deed in 1900, did so as a trustee for the minor children (himself and his sister); and that limitations did not begin to run until the death of Mrs. Jemima E. Keylon. Cases cited by the appellant on his theory are *Higgs* v. *Smith*, 100 Ark. 543, 140 S. W. 990; *Green* v. *Maddox*, 97 Ark. 397, 134 S. W. 931; *Stubbs* v. *Pitts*, 84 Ark. 160, 104 S. W. 1110; *Hawkins* v. *Reeves*, 112 Ark. 389, 166 S. W. 562; and *McLaughlin* v. *Morris*, 150 Ark. 347, 234 S. W. 259. On the other hand, appellee claims that Mrs. Jemima E. Keylon acquired the fee title from the estate of Robert F. Russell, and not from Joseph H. Russell, from whom her husband had contracted to purchase; that Mrs. Jemima E. Keylon paid her own money for the land and owned it in her own right; that when she conveyed in 1941, her grantees received a full fee title; and that at all events, A. L. Keylon is barred by limitations.

The chancery court correctly held that the lands here involved were not the homestead of S. C. Keylon, and therefore did not pass to his widow and heirs as homestead. In view of that holding, it is unnecessary for us to discuss the respective contentions of the parties as hereinbefore set forth, because we find that the decree of the chancery court should be affirmed on the principle of equitable estoppel. While equitable estoppel was not

134

pleaded, nevertheless, the evidence supporting such defense was received without objection; and in that eventuality equitable estoppel may be made the basis of the decision on the merits of the controversy. See *Brotherhood of Trainmen* v. *Long*, 186 Ark. 320, 53 S. W. 2d 433; *Anglin* v. *Marr Canning Co.*, 152 Ark. 1, 237 S. W. 440; and see, also, 19 Am. Juris. 850 and annotation in 120 A. L. R. 87. Without objection, the appellee testified:

"Q. How did you get possession of this land? A. It was deeded to me and my wife by my mother-in-law. Q. For value received? A. Yes. Q. What was that value? A. We counted it about twelve hundred dollars ($1,200). Q. How did you count that? A. Well, we thought that was about the valuation of it, but my mother-in-law offered this land as payment for her care during her declining years; and this offer was made to us after it was made to her son and they couldn't agree; and then she came to me. Q. You did keep her? A. That's right."

In 1941, Mrs. Jemima E. Keylon went to the appellant (her son), and offered to deed the land to him if he would agree to take care of her in her declining years; and he would not agree. He knew at that time that she was claiming the land as her own. The deed of record (and under which he seeks to claim as a *cestui que trust*) showed that she paid $288 of her own money in order to obtain the deed in 1900. If A. L. Keylon intended to claim that his mother was a mere trustee, he should have spoken while she was still alive and able to testify as to the transactions that occurred from 1893 to 1941. There is some evidence in the record indicating that S. C. Keylon might have surrendered the land in 1894 or 1895. Furthermore, there is some evidence that Mrs. Jemima Keylon at one time had the original "Russell papers," and that they were burned after a lapse of years. All such evidence would undoubtedly have thrown considerable light on the question of whether Mrs. Jemima Keylon was a trustee or a fee purchaser in her own right. Appellant's delay works a species of laches that is closely related to equitable estoppel (19 Am. Juris. 637).

Instead of "speaking up" and asserting his claim in 1941 when his mother offered to deed the land to him, appellant remained silent, when to speak would have saved John Arnold this suit. Not only did the appellant refuse to agree to take care of his mother in her last years, but he sat by and knowingly allowed her to convey the land to John Arnold, and knowingly allowed Arnold to provide maintenance and support for her from 1941 to 1945. Finally, after his mother had passed away, and death had extinguished her testimony, then appellant asserted his claimed interest. It is well settled that equitable estoppel may arise by silence or inaction. In 19 Am. Juris. 661 this appears:

"An estoppel may arise under certain circumstances from silence or inaction as well as from words or actions. Estoppel by silence or inaction is often referred to as estoppel by 'standing by', and that phrase in this connection has almost lost its primary significance of actual presence or participation in the transaction and generally covers any silence where there are a knowledge and a duty to make a disclosure. The principle underlying such estoppels is embodied in the maxim 'one who is silent when he ought to speak will not be heard to speak when he ought to be silent'."

*Trapnall* v. *Burton*, 24 Ark. 371, is an opinion prepared by Albert Pike.[1] In that opinion there is this classic language:

"If a person who has the claim to, or is the owner of property real or personal, stands by and permits it to be sold, without giving notice of or asserting his right, he is estopped from setting up his claim or title, against the purchaser. *Shall* v. *Biscoe*, 18 Ark. 142; *Corbett* v. *Norcross*, 35 N. H. 99; *Storrs* v. *Barker*, 6 C. J. R. 344.

" 'There is no principle,' said Chancellor KENT, in *Wendell* v. *Van Renssalaer*, 1 J. C. R. 354, 'better established in this court, nor one founded on more solid considerations of equity and public utility, than that which

---

[1] Immediately following the syllabus of this case, and on page viii of 24 Arkansas Report there is the explanation as to how the opinion was prepared by Albert Pike.

declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice; and his conscience is bound by this equitable estoppel'."[2]

Our subsequent cases have recognized and applied the principle of equitable estoppel stated in *Trapnall* v. *Burton, supra.* See *Gill* v. *Hardin,* 48 Ark. 409, 3 S. W. 519; *Graff* v. *Lena Lumber Co.,* 96 Ark. 350, 131 S. W. 697; *M. & P. Bank* v. *Citizens Bank,* 175 Ark. 417, 299 S. W. 753, and cases there cited. Authorities generally recognize the applicability of equitable estoppel to a case like the one at bar. See Pomeroy on Equity Jurisprudence, 5th Ed., § 807, and 31 C. J. S. 306, *et seq.*

We hold that the appellant is equitably estopped from questioning the title of John Arnold. Therefore, the decree of the chancery court is affirmed.

---

[2] This same quotation from Chancellor Kent was used by Mr. Justice HARLAN of the U. S. Supreme Court in *Kirk* v. *Hamilton,* 12 Otto (102 U. S.) 68, 26 Law Ed. 79.