POHNKA *v.* THE FIRST NATIONAL BANK OF WYNNE.

5-502                                      275 S. W. 2d 641

Opinion delivered February 14, 1955.

[Rehearing denied March 14, 1955.]

*W. J. Dungan,* for appellant.

*Shaver & Shaver,* for appellee.

J. SEABORN HOLT, J.   This is a suit by appellee to foreclose a chattel mortgage lien. From a decree, in ef-

fect, holding W. J. Pohnka (the father) personally liable for the entire debt of his son to appellee, because of a waiver W. J. Pohnka had signed and because he had worked 70 acres of 140 acres which his son was supposed to have farmed to rice in 1951, comes this appeal.

We have concluded that the trial court erred in so holding.

There appears to be little, if any, dispute as to material facts. W. J. Pohnka orally rented to his son, E. M. Pohnka, 140 acres of land out of what is known as the Pohnka farm in Woodruff County, Arkansas, for the purpose of planting rice during 1951, — on a basis of ¼ of the rice crop to the father. The son applied to appellee, Bank, for a loan and the Bank loaned him a total of $1200.00, $500.00 on March 14, 1951, $500.00 on April 19, 1951, $100.00 on May 15, 1951 and $100.00 on August 4, 1951. E. M. Pohnka (the son) on March 14, 1951 gave the Bank a chattel mortgage as security covering "his entire crop of cotton, rice and corn to be cultivated and produced by him during the year 1951, upon the farm known as Pohnka Farm, and described as follows: . . . 140 acres rice; Oliver '80' Rice Farm Tractor, Serial No. 816171; Int'l ¢ SP Combine and Cart; Disc Harrow; Dyke Plow."

This mortgage was recorded March 19, 1951.

On March 13, 1951, the son asked his father to sign a landlord's waiver of lien to the Bank to enable him, the son, to obtain the loans above from the Bank. The father (appellant) on the afternoon of that same day (March 13) executed the following waiver: "In consideration of the sum of $1.00 . . . , I . . . relinquish and waive unto the First National Bank, Wynne, Arkansas, its transferees and assignees, all and singular, the priority of any right, claim, interest, equity or lien I . . . may have for rent, advances or other indebtedness on, in and to the crops now growing on or to be grown during the year 1951 on lands described in the mortgage executed by ————————— to the First National Bank, Wynne, Arkansas. Dated the ——— day of ———————,1951.

Such waiver to extend to and cover the amount now due under and secured by said mortgage or which may be hereafter secured thereby under the terms thereof, and I . . . hereby certify to the said First National Bank, Wynne, Arkansas, its successors or assigns, as an inducement to make the loan, that I . . . have not heretofore executed any assignment or waiver of my said lien in favor of any other person, partnership or corporation.''

It also is undisputed that W. J. Pohnka had, prior to the execution of the above waiver and the execution of the chattel mortgage given the Bank by his son, signed a note and a mortgage, being a crop mortgage, with the United States of America, acting through the Administrator of the Farmers Home Administration, for a loan of $3500.00 on all crops of whatever kind that he had or might plant in Woodruff County, Arkansas, on the Pohnka Farm. This mortgage, the record shows, was filed in the office of the Circuit Clerk and Recorder of Woodruff County, Arkansas, at 12:00 o'clock A.M. on March 13, 1951. This mortgage covered any and all crops produced on the 140 acres of the W. J. Pohnka Farm, the same 140 acres that W. J. Pohnka had orally leased to his son, E. M. Pohnka. E. M. Pohnka (the son) took no steps to farm the lands in 1951 that he rented. He hired himself out to Morrilton Cotton Oil Company to recondition and to operate the cotton gin that year. When the father learned that his son had given up the lands he had rented, he took over and planted to rice 70 acres of the 140 he had previously rented to his son and the other 70 acres lay out. The father did not know his son had completed the loan with the Bank until the fall of 1951, and the Bank did not know the son had abandoned his crop until late in 1951.

The father realized $3,002.38 from the rice crop which he produced in 1951 from the 70 acres of the 140 acres which he had orally rented to his son. This entire amount from the rice crop he properly paid over to the F.H.A., as he was bound to do, to apply on his debt ($3500.00) to the United States (F.H.A.) which, as in-

dicated, held a first chattel mortgage lien on this rice crop. *Walker* v. *Rose,* 153 Ark. 599, 241 S. W. 19.

Appellee says: ''Appellant executed a waiver and consented for the collection of the mortgage indebtedness out of any crops grown on the lands covered by said waiver, and he is, therefore, liable for said indebtedness as a matter of contract.'' We do not agree.

As indicated, the Bank made the loan to the son, not to the father. The recorded first mortgage held by the United States (F.H.A.) was prior to the waiver and was of record and therefore appellee was bound to take notice of its contents. It may be, and in fact it appears, that the Bank's failure to keep informed as to the son's actions and what disposition he made of these funds, was influenced by the fact that the Bank thought its loans to the son were amply secured by the farm **equipment alone,** included in the mortgage in question, but in fact such equipment was not owned by the son, but by the father, and was so decreed by the trial court, and this farm equipment passed out of the case.

Appellee says: ''Appellee had no reason to believe that the son did not own the equipment. If appellee had such knowledge the loan would not have been **approved.''**

It was the son's debt and it appears that the father did not know of its existence until long after the Bank made the loan to the son. The father received none of the money loaned his son. The only instrument he signed was a waiver of his landlord's lien for rents. There were no rents, and the waiver, we think, was not effective to bind him contractually for his son's debt to the Bank. We find no evidence that the father participated in any deception practiced by his son on the Bank.

We do not agree that appellant is estopped from denying liability, in the circumstances here. Estoppel is not based on future events, but on facts existing at the time the injured person is caused to act. ''An estoppel does not arise in favor of the party claiming it, unless misled by the acts or conduct of the other party.

*Rhodes* v. *Cissel,* 82 Ark. 367, 101 S. W. 758; *Rogers* v. *Galloway Female College,* 64 Ark. 627, 44 S.W. 454." *Yaffe Iron & Metal Co.* v. *Pulaski County,* 188 Ark. 808, 67 S.W. 2d 1017.

Appellee has failed to point out any acts of the appellant which we think sufficient to show that it was misled.

Accordingly, the decree is reversed and the cause remanded with directions to dismiss appellee's complaint for want of equity.