CLIFTON WHITLEY AND KATHRYN D. WHITLEY *v.*
HAROLD STANLEY IRWIN AND IONA JANE IRWIN

5-5490                                    465 S. W. 2d 906

Opinion delivered April 26, 1971

*Warner, Warner, Ragon & Smith,* for appellants.

*Charles I. Evans,* for appellees.

JOHN A. FOGLEMAN, Justice. This case involves the proceeds of a policy of fire insurance for $2,000 issued by Fireman's Insurance Company to appellants Clifton and Kathryn D. Whitley on October 31, 1964. It covered a two-story dwelling house. On March 5, 1966, the Whitleys conveyed the property on which the house was located to appellees Harold Stanley and Iona Jane Irwin. The Irwins agreed to pay the Whitleys $700 cash and to assume a note secured by mortgage payable to ₒW. W. Carolan, Trustee, on which the balance amounted to $1,734. The Irwins also executed a note in favor of the Whitleys for $1,266 payable at the rate of $60 per month, plus interest until it was fully paid. A few days after this conveyance, Mrs. Whitley attempted to cancel the policy, but the insurance agent who issued the policy advised that there could be no cancellation without surrender of the policy. Thereafter, on March 18, 1966, while the Whitleys were still in possession of the dwelling house it was destroyed by fire. When the insurance

company denied liability, appellants filed suit on August 15, 1967, against the insurance company, which answered denying liability. W. W. Carolan, Trustee, intervened claiming the policy proceeds to the extent of the Whitleys' liability on the note payable to him. During the pendency of the litigation the balance due on this note was paid by the Irwins. At the time of the trial they had also paid the note due the Whitleys.

The insurance company later paid the face amount of the policy into the registry of the court on April 15, 1968. On the date of this payment, the Irwins intervened claiming the policy proceeds. One-third of the policy proceeds was paid to the attorney for the Whitleys. The chancery court, to which the case was transferred on October 29, 1969, on motion of appellees, awarded the balance to the Irwins.

Appellants assert three points for reversal, which are:

I. There was no effective transfer of the insurance policy from the Whitleys to the Irwins due to the personal nature of the insurance contract.

II. The purported transfer of the insurance from the Whitleys to the Irwins was void for lack of consideration.

III. The equitable maxims requiring good faith and diligence in the assertion of one's rights should bar the appellees from any recovery of the insurance proceeds.

Appellants' argument that the contract of insurance was personal and did not pass with the title to the property is correct. Appellants paid the premiums to the insurance company. The contract was personal with them for their benefit and was in no sense the proceeds of the property destroyed. *Barner* v. *Barner*, 24¹ Ark. 370, 407 S. W. 2d 747. Under the circumstances, if appellants were not entitled to recover on it, no one was. *Langford* v. *Searcy College*, 73 Ark. 211, 83 S. W. 944. *McDonald* v. *Rankin*, 92 Ark. 173, 122 S. W. 88;

*National Union Fire Ins. Co.* v. *Henry*, 181 Ark. 637, 27 S. W. 2d 786. This principle of law is not contested by appellees. They contend, however, that it is inapplicable because appellants are estopped by their own actions from denying appellees' right to the insurance proceeds, that appellees asserted their own claim with due diligence, that they are entitled to be subrogated to the rights of Carolan, that actual transfer of the policy was prevented by unavoidable casualty and that appellants are unjustly enriched if they are permitted to retain the insurance proceeds.

Determination of the questions raised depends for the most part upon the answers to points asserted by appellees in support of the decree. The sale by appellants to appellees was closed in the office of the appellees' attorney on Saturday morning. He inquired whether the insurance was to be transferred. The Irwins did not have the money to pay the unearned premium, but testified that it was to have been transferred and that Mr. King, who was her father, and Mrs. Rhea Eichor, both of whom were present, offered to advance the unearned premium to the Whitleys. Mrs. Eichor testified that her offer to lend the money was declined by the Irwins. Mrs. Irwin stated that at that time it was thought that the office of the insurance agency where the transfer would have had to have been accomplished was closed. Mr. King and Mrs. Eichor stated that the primary reason for deferring action was the Irwins' haste to return to Louisiana. It was agreed that the matter would be deferred until the Irwins returned from their residence in Louisiana after Mr. Irwin had completed the following week's work. Mr. Irwin testified that, as soon as the insurance was transferred and the unearned premium paid, the insurance and insurable interest were to be theirs.

The Irwins admittedly did nothing else to accomplish the transfer, or to collect the insurance proceeds, until the Whitleys had sued and recovered even though both of them knew that the Whitleys were trying to collect from the insurance company. Mrs. Irwin testified that she did not talk to either of the Whitleys about

the collection of the insurance during the year following the occasion when Mrs. Whitley called to advise the Irwins that the house had burned. There is little room for doubting that Mrs. Irwin knew that the Whitleys were endeavoring to get a lawyer to sue the insurance company.

Testimony of Mr. Whitley that he reserved the bathroom fixtures and cabinets in the house was disputed. Evidence that the Irwins intended to convert the house into a barn was undisputed.

We find nothing on which to base an estoppel against appellants in this case, to indicate that it was an issue in the trial court or to imply that the trial court found an estoppel. On the other hand it might well be said that the Irwins effectively estopped themselves from claiming the insurance proceeds.

In the first place, the absence of evidence that any action or inaction on the part of the Irwins was induced by any representation made by the Whitleys bars any valid claim of estoppel. *Morgan* v. *Wells,* 242 Ark. 499, 415 S. W. 2d 323. In the second place, the primary requisite of equitable estoppel is lacking because the Whitleys did not, by acts, language or silence, misrepresent or conceal any material fact from the Irwins at any time. *Exchange Bank & Trust Co.* v. *Gibbons,* 228 Ark. 454, 307 S. W. 2d 877. In the case just cited, we pointed out that estoppel operates to put the party entitled to its benefit in the same position as if the thing represented were true. We also held the doctrine inapplicable where the result is attributable to carelessness or ignorance of the law on the part of the party claiming its benefit. Here, there was nothing said by either of the Whitleys which could have been the basis of any change of position by the appellees. The position of the Irwins clearly resulted from their own failure to take any steps to effect a transfer of the insurance policy or their ignorance of the legal effect of the insurance contract and of their failure to effect the transfer, or both. Furthermore, estoppel must be based on facts existing at the time the injured person is caused to

act and not upon subsequent events. *Pohnka v. The First National Bank of Wynne,* 224 Ark. 599, 275 S. W. 2d 641.

The Irwins' failure to assert their claim after the destructive fire and after being apprised of efforts by appellants to collect the insurance proceeds was actually a bar to their assertion of a claim to the proceeds after the efforts of the Whitleys caused their payment into court. Where one stands by and fails to assert a claim, he cannot be heard to assert it against the interest of those who relied on his silence. *Johnson v. Spencer,* 222 Ark. 710, 262 S. W. 2d 290. It seems only reasonable to assume that the employment of an attorney by the Whitleys and the institution of the suit against the insurance company following the failure of the Irwins to take any step toward effecting a transfer of the policy and their failure to assert any claim whatever to the proceeds with full knowledge that appellants were asserting a right thereto were in at least partial reliance upon this silence and inaction. Such silence and inaction may be the basis of equitable estoppel. *Keylon v. Arnold,* 213 Ark. 130, 209 S. W. 2d 459. Mere silence and inaction does constitute an estoppel under circumstances existing here, where appellees could have easily put both appellants and the insurance company on notice of their claim, if indeed they had any, and could have commenced the very action they did institute when they learned that the company had paid the policy proceeds into court. Their failure to do so could be taken to constitute a misleading reticence and apparent acquiescence in, and ratification of, what was being done. *Stewart Oil Co. v. Bryant,* 153 Ark. 432, 243 S. W. 811.

Appellees base their claim of subrogation upon a clause in the Carolan mortgage stating the agreement of appellants to keep the dwelling insured for full insurable value with loss clause in favor of the mortgagee. There was no such clause in the policy. We have held that such a stipulation is an appropriation of the insurance proceeds to the satisfaction of the mortgage indebtedness. See *Bonham v. Johnson,* 98 Ark. 459, 136 S. W. 191; *Sharp v. Pease,* 193 Ark. 352, 99 S. W. 2d

588. Even so, the doctrine of subrogation comes into play in Arkansas only when one not primarily liable pays the debt. See *Baker* v. *Leigh,* 238 Ark. 918, 385 S. W. 2d 790. The primary liability of the Irwins for the payment of the debt is beyond question. In *Lindley* v. *Marriatt,* 196 Ark. 1178, 114 S. W. 2d 453, we said:

> When one purchases property on which there is an encumbrance and assumes and agrees to pay off the encumbrance, he becomes, so far as the debt is concerned, primarily liable, and he cannot, by paying it off, be subrogated to the rights of the mortgagee against the person from whom he purchased.

Appellees cite no authority whatever for their contention that unavoidable casualty prevented the accomplishment of the transfer of the insurance. It is based on the fact that Mr. Irwin suffered an injury during the week following the conveyance of the property and the statement that he was unable to travel prior to the destruction of the property some 13 days later. We are unable to fathom the basis of this contention. Any merit it might have is negated by the total absence of any effort on the part of either of the appellees to make any other arrangement for the transfer, to offer any explanation for their nonappearance or even to attempt any step to establish their rights before the collection of the insurance proceeds in spite of the fact that they were at all times making payments on both the note due Carolan and that due appellants. Either Mr. King, Mrs. Irwin's father, who lived in the vicinity with the Eichors, or Mrs. Eichor might have been utilized as an agent to make the payment and accomplish the transfer, but was not. Appellees did not avail themselves of the services of their attorney who represented them in the closing. While Mr. Irwin's injury may have been such as to prevent travel by either him or his wife, it did not foreclose timely use of the telephone or mails. The record does not reveal any attempt on the part of appellees to pay the unearned premium to the Whitleys before or after the fire. We find no merit in this argument.

We do not find the doctrine of unjust enrichment to require payment of the insurance proceeds to appellees. In the deed from the Whitleys to the Irwins a lien was retained to secure the payment of the note representing the balance of the purchase price. In effect, the Whitleys held a mortgage on the property, subject only to the Carolan mortgage. The general rule recognized and applied in this state is that a mortgagee of real property who effects insurance on the mortgaged property at his own expense and for his own benefit, which is not limited to his interest as mortgagee, has a right to recover the proceeds of the insurance for his own use and benefit and the money received by him is not a payment on the mortgage, even when his only insurable interest is that of a mortgagee. *Ponder* v. *Gibson-Homans Co.*, 166 Ark. 591, 266 S. W. 682.

The maxim or doctrine appellees rely upon is that no one shall be allowed to unjustly enrich himself at the expense of another. The word "unjustly" as so used means "unlawfully." *Sheasgreen Holding Co.* v. *Dworsky*, 181 Minn. 79, 231 N. W. 395 (1930); *American University* v. *Forbes*, 88 N. H. 17, 183 A. 860 (1936); *Greenwich Contracting Co.* v. *Bonwit Const. Co.*, 156 Conn. 123, 239 A. 2d 519 (1968). One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right. *Worthen Bank & Trust Co.* v. *Franklin Life Ins. Co.*, 260 F. Supp. 1 (D. C. Ark. 1966), aff'd 370 F. 2d 97 (8th Cir. 1966); *Pelser* v. *Gingold*, 214 Minn. 281, 8 N. W. 2d 36 (1943). One is not unjustly enriched by receipt of that to which he is legally entitled. *American University* v. *Forbes*, supra.

As appropriately stated by District Judge Henley in the *Worthen* case, "Parties to business transactions are required to act justly and honestly, but they are not required to act unselfishly or altruistically." A moral duty does not meet the demands of equity in this regard, in the absence of some specific legal principle or situation which equity has established or recognized bringing a case within the scope of the doctrine. *American University* v. *Forbes,* supra. *Anderson* v.

*Anderson,* 155 Kan. 69, 123 P. 2d 315 (1942). No recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it. *Beauregard* v. *Orleans Trust Co.,* 108 Vt. 42, 182 A. 182 (1936).

Since the Whitleys had a legal right to the proceeds of the insurance policy, the doctrine of unjust enrichment will not support the decree.

The decree is reversed and judgment entered for appellants for the proceeds of the policy held in the registry of the chancery court.