2010 Ark. App. 231

**Rocky LAWRENCE and Debra Lawrence, Appellants**

v.

**Patsy Crafton BARNES f/k/a Patsy Crafton Smith, Kimberly Zellner Ward, Trevor Ward, Steven Zellner, Misty Zellner, Virginia Crafton Lewis, James M. Lewis, Debi Zellner Tacker, Tim Tacker and Conway Title and Escrow Services, Inc., Appellees.**

No. CA 09–928.

Court of Appeals of Arkansas.

March 10, 2010.

---

Roger Hayward Fitzgibbon, Jr., Gill Elrod Ragon Owen & Sherman, P.A., Little Rock, for appellants.

Stephen L. Gershner, Davidson Law Firm, Ltd., Jay Mark Davis, Wright, Lindsey & Jennings, LLP, Little Rock, for appellees.

ROBERT J. GLADWIN, Judge.

Appellants Rocky and Debra Lawrence, husband and wife, contend that the Faulkner County Circuit Court erred in reforming the warranty deeds conveyed to them by appellees Patsy Crafton Barnes, Kimberly Zellner Ward, Trevor Ward, Steven Zellner, Misty Zellner, Virginia Crafton Lewis, James M. Lewis, Debi Zellner Tacker, and Tim Tacker (Craftons), finally reserving the mineral rights at issue in the Craftons. On cross-appeal, the Craftons claim that the trial court erred by refusing to award them attorney's fees and costs. We affirm on direct appeal and reverse and remand on cross-appeal.

## Statement of Facts

Rocky Lawrence negotiated to buy the Crafton property, 110 acres of land in Faulkner County, Arkansas, through B.F. Glover, a real estate agent with Henry Hawk Real Estate. Lawrence claimed that he offered to buy the property, but was told that it was not known at the time whether the Craftons were going to sell the mineral rights on the property. Lawrence testified that when he made the offer to buy, Glover filled out the paperwork while in a truck with Lawrence out on the property and the contract that he signed did not reserve the mineral rights in the sellers. However, Glover testified that he did not fill out the paperwork in his truck, that he did so in his office, and that his broker went over the contract and filled in the reservation of mineral rights to the owner before anyone signed the contract. Patsy Crafton Barnes claimed that she never intended to sell the mineral rights to the property and was not authorized to do so by the powers of attorney she had for the members of her family when she signed the real-estate contract. Mark Lollar, a loan officer for First Security Bank, testified that he agreed to loan the money to Lawrence on the property, regardless of whether the minerals conveyed.

Lawrence testified that, as the buyer, he closed on the property at appellee Conway Title Services, Inc., before the sellers did. He claimed that he specifically asked about the mineral rights and was told that if the sellers closed with the paperwork as presented, the mineral rights would convey. He claimed that he left the real-estate closing believing that he had secured the mineral rights to the property.

However, Ricky Stone, a real-estate agent who attended the Lawrences' closing, testified that he told Lawrence prior to the closing that the mineral rights did not convey with this property. He said that the discussion regarding mineral rights occurred before Lawrence signed the real-estate contract. Stone further testified that Lawrence told him, when discussing a subsequent real-estate deal, that he knew he did not get the minerals on the 110 acres, but that he wanted to get them on the new deal.

Ms. Barnes and her sister Virginia Crafton Lewis testified that they both attended

their closing as the sellers and did not intend to convey the mineral rights. Ms. Lewis stated that she told the closing agent at Conway Title several times during closing that the mineral rights would not convey. She said that she never got any indication that she was misunderstood. She admits to signing the warranty deed, which does not refer to a reservation of mineral rights.

Ms. Barnes testified that she did not authorize Conway Title to change any of the terms in the real-estate contract, which reserved the Craftons' interest in the mineral rights. She claimed that she only realized there was a problem with the deeds when she went out to the property and discovered the construction of a gas well. At that point, she stated that Lawrence informed her that she did not own the mineral rights. She admits that she did not read the warranty deeds at closing, but instead relied on the title company, which prepared the deeds. She contends that she did not know if the reservation of mineral rights was contained in the real-estate contract at the time that Lawrence signed it, but that the reservation was there when she did.

Sarah Hooks prepared the warranty deeds at issue on behalf of Conway Title. She claimed that she understood that the sellers contracted to reserve the mineral interests in themselves and that she had conversations with the sellers respecting the issue of reserving mineral interests. She admitted that, at or before the sellers' closing, they discussed the fact that the mineral rights did not convey with the property. She assured the sellers that everyone was aware that the mineral

rights were being retained and that the title company would get it taken care of at closing. She said that they discussed the deeds and that there would be a notation on the deed that stated that the sellers were to retain the mineral rights. She testified that the reservation was not in the deeds because of human error and that it just "slipped through the cracks." She testified that she did not remember a conversation with the Lawrences regarding mineral rights, but that if the original contract was to be changed, an addendum would have to be signed by all parties. No addendum was signed.

Ms. Barnes claimed that after she saw the platform on the property, she went to Conway Title. She testified that she was told by Conway Title that they would file a correction deed that would reserve the mineral rights, which would fix the problem. However, when Lawrence received a request to sign a correction deed, he refused, and this litigation ensued. Lawrence filed a complaint against the Craftons and Conway Title seeking to void the correction warranty deeds, quieting title in all the mineral interest in the property, and an award of attorney's fees. The Craftons filed a counterclaim for reformation of the warranty deeds and a cross-complaint against Conway Title for money damages in the event that the Lawrences prevailed on their quiet-title claim.[1] The trial court denied and dismissed the complaint to quiet title to the mineral estate of the property in the Lawrences, declared the correction deeds invalid, reformed the warranty deeds to state that the mineral rights are reserved to the Craftons, and dismissed the complaint of the Lawrences against Conway Title.[2]

---

1. The Craftons also filed a third-party complaint against First Security Bank to reform the mortgage from the Lawrences to the bank to exclude mineral rights. This reformation

was granted by the trial court and included in the judgment filed on May 5, 2009.

2. By order filed October 20, 2008, the Craftons' cross-claim against Conway Title was

Following entry of the judgment, the Craftons filed a motion for attorney's fees, claiming that, as the prevailing party to this contract action, they were entitled to attorney's fees and costs pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999) and Arkansas Rule of Civil Procedure 54(d) (2009), in the amount of $30,060.56. The trial court denied the motion, stating that the statute does not authorize the award of attorney's fees with regard to a reformation action, and declined to award the fees under its discretionary powers pursuant to the rule. The Lawrences filed a timely notice of appeal, and the Craftons filed a notice of cross-appeal. This appeal followed.

## Standard of Review

Reformation is an equitable remedy that is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence the agreement. *Lambert v. Quinn,* 32 Ark. App. 184, 798 S.W.2d 448 (1990). A mutual mistake is one that is reciprocal and common to both parties, each alike laboring under the same misconception in respect to the terms of the written instrument. *Yeargan v. Bank of Montgomery County,* 268 Ark. 752, 595 S.W.2d 704 (Ark.App. 1980). A mutual mistake must be shown by clear and decisive evidence that, at the time the agreement was reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. *See Lambert v. Quinn, supra.* Whether a mutual mistake warranting

reformation occurred is a question of fact. *Id.*

Even in reformation cases, where the burden of proof is by clear and convincing evidence, we defer to the superior position of the trial judge to evaluate the evidence, *Akin v. First National Bank,* 25 Ark. App. 341, 758 S.W.2d 14 (1988), and the proof need not be undisputed. *Lambert v. Quinn, supra.* Although we review traditional equity cases de novo, the test on review is not whether we are convinced that there is clear and convincing evidence to support the trial judge's findings but whether we can say that the trial judge's findings are clearly erroneous. *Id.*

The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is an adequate ground for reformation if the writing fails to reflect the parties' true understanding. *See Jones v. Jones,* 27 Ark. App. 297, 770 S.W.2d 174 (1989). A court may, through reformation, correct the description in a deed where the deed incorrectly reflects the property that the parties intended to be conveyed. *See, e.g., Kohn v. Pearson,* 282 Ark. 418, 670 S.W.2d 795 (1984); *Galyen v. Gillenwater,* 247 Ark. 701, 447 S.W.2d 137 (1969); *Lambert v. Quinn, supra.*

*Statler v. Painter,* 84 Ark. App. 114, 118–19, 133 S.W.3d 425, 428 (2003).

### Discussion

The Lawrences argue that the trial court erred when it reformed the warranty deeds for two reasons. First, they contend that the Craftons failed to prove that the Lawrences did not intend to purchase the mineral rights to their farm. They claim that to have a mutual mistake, the

severed. Therefore, the Craftons sought and received a Rule 54(b) Certificate in order that an appeal could be taken before a determina-

tion of the cross-claim. Ark. R. Civ. P. 54(b)(1) (2009).

Craftons had to prove that both parties made a mistake, and the proof must be clear, convincing, unequivocal, decisive, and leave no room for reasonable doubt. They contend that Glover's testimony and the handwritten contract do not meet the extraordinary evidentiary burden necessary to reform a written instrument in Arkansas. *Doniphan, K. & S. Rd. Co. v. M. & N. A. Rd. Co.*, 104 Ark. 475, 149 S.W. 60 (1912). The Lawrences argue that *Doniphan* controls here, and that the court did not allow reformation where the evidence was not clear, convincing, and beyond reasonable controversy. *Id.* at 488–89, 149 S.W. at 66.

In *Doniphan*, the Arkansas Supreme Court overturned the trial court's reformation of a contract based on the parties' dispute as to the meaning of the word "any." *See id.* The parties were railroad corporations who had entered into a contract for certain trackage rights to railroad lines. *Id.* A disagreement arose as to the kind of traffic that appellant was entitled to carry over appellee's tracks. *Id.* Appellee contended that the trackage rights were limited and restricted to pine logs, but appellant claimed that the rights were not limited. *Id.* The trial court reformed the contract to authorize appellant to handle only pine logs over appellee's line of railroad. *Id.* On appeal, the supreme court looked to the original contract to determine if it was written to restrict the traffic. *Id.* The court held that the parties contemplated no restrictions at the time the contract was written. *Id.*

The court stated, "In all such cases, the question is not what the parties would have intended but for a misapprehension, not what they would have intended had they known better, but rather, did the parties understandingly execute the instrument, and does it express their intention at the time, informed as they were?" *Doni-*phan, 104 Ark. at 484, 149 S.W. at 64. The court held that there was a conflict as to whether or not the contract, as written and signed, expressed the intention and agreement of the parties at the time of its execution. *Id.* Ultimately, the court reversed the trial court's reformation, holding:

> While the findings of the chancellor as to questions of fact are persuasive, they are not conclusive, and where they are made upon testimony which is conflicting but which, under the law, must be clear, convincing, and beyond reasonable controversy, and the evidence is not of that probative force, it becomes our duty to set the findings aside. *Mitchell [Mfg. Co.] v. [Ike] Kempner [& Bro.]*, 84 Ark. 349, 105 S.W. 880 [(1907)]. The language employed in this contract is not different from that appearing in any written instrument concerning the effect of which the contracting parties may differ. The parties may resort to the courts for its construction, but on that account it is not necessarily vague or ambiguous. When properly considered, the language employed in this contract is plain and unambiguous. With every means of information open to them, the parties signed and executed this written instrument, which then became a binding contract which cannot be altered, varied, or added to.

*Id.* at 488–89, 149 S.W. at 65–66.

The Lawrences argue that the evidence here also conflicts on the issue of intent. Rocky Lawrence testified that he intended to purchase the mineral rights. He also testified that when he made his offer, there was no language in the offer relating to the exclusion of mineral rights and he was told by Glover that he did not know whether the Craftons owned the mineral rights. Glover disputed this testimony. Glover and Stone testified that

they told Lawrence that the mineral rights would not convey. Lawrence disputed their testimony. Therefore, the Lawrences argue that the Craftons' evidence lacks the probative value necessary to rise to the level of being clear, convincing, and beyond reasonable controversy, and this court must reverse pursuant to *Doniphan*.

Second, the Lawrences argue that the trial court erred in reforming the deeds because the Craftons accepted the benefit of their bargain and waited over a year to complain. The Lawrences claim that, according to both Ms. Barnes's and Ms. Lewis's testimony, they read the general warranty deeds prior to executing them, yet neither said anything to anyone about the mineral rights not being excluded. They both received the benefit of the purchase price of the property and utilized those proceeds. Therefore, the Lawrences contend that the trial court erred in not estopping the Craftons from claiming that the general warranty deeds did not convey title to the mineral rights.

The Craftons respond, first claiming that the trial court correctly found that Rocky Lawrence did not intend to purchase the mineral rights. We agree. Mutual mistake can be the parties' mistaken belief that they were using language with the same intention when in fact they attached different meanings to the terms they employed, as in *Doniphan, supra.* Or, a mutual mistake consists of the failure of the written contract to state accurately the actual agreement of the parties. *See Statler v. Painter, supra.* (where this court held that a mistake of a draftsman, whether he is one of the parties or merely a scrivener, is an adequate ground for reformation of a deed if the writing fails to reflect the parties' true understanding).

The evidence before the trial court was that the real-estate contract stated that mineral rights do not convey. No writings exist to change the terms of that contract. Further, Mark Lollar testified that Lawrence intended to purchase the property with or without the minerals. The deeds are inconsistent with the real-estate contract. The commitment for title insurance given to the Lawrences excludes mineral interests from coverage. Moreover, the undisputed evidence is that Sarah Hooks, the preparer of the deeds, by mistake failed to reserve minerals to the Craftons. Therefore, the trial court's decision to reform the deeds was not clearly erroneous.

Next, the Craftons contend that the circuit court did not err in refusing to estop the Craftons from reforming the general warranty deeds. We agree. Equitable estoppel is defined where, "if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person." *Keylon v. Arnold,* 213 Ark. 130, 135–36, 209 S.W.2d 459, 461 (1948) (citations omitted). The Lawrences did not erroneously expend money under an erroneous opinion of title. They contracted to purchase the property without minerals and paid nothing more for a conveyance of the minerals. Lawrence intended to buy the land with or without the minerals. Ms. Barnes confronted Lawrence while the pad was being constructed. That was the first time she learned that the Lawrences were claiming ownership of the mineral rights to the Crafton farm. Accordingly, we affirm, as the trial court's decision was not clearly erroneous.

Finally, the Craftons contend on cross-appeal that the trial court erred by refusing to award them attorney's fees and costs. The general rule in

Arkansas is that attorney's fees are not awarded unless expressly provided for by statute or rule. *See Security Pac. Housing Servs., Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). Arkansas Code Annotated section 16–22–308 gives the trial court discretion in awarding attorney's fees in cases based upon contracts. A trial court's decision as to whether to award attorney's fees for breach of contract will not be set aside absent an abuse of discretion. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995).

The Craftons argue that a party who successfully defends against a suit that has been pled as a breach of contract is eligible for an award of a reasonable attorney's fee under Arkansas Code Annotated section 16–22–308. *See, e.g., Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001) (where the court found that a prevailing party existed and that the case sounded in contract based upon a lease agreement). The Craftons also cite *Cumberland Financial Group, Ltd. v. Brown Chemical Co.*, 34 Ark. App. 269, 810 S.W.2d 49 (1991), where this court upheld an award of attorney's fees to the party defending against a contract claim. The Craftons contend that allowing attorney's fees to successful defenders in contract cases does not change because at issue is an alleged breach of an implied warranty to the contract. They cite *Curry v. Thornsberry*, 354 Ark. 631, 128 S.W.3d 438 (2003), where the homebuilder successfully defended the suit against him for breach of contract based on a theory that the homebuilder had breached the warranty of habitability. Further, in *Murchie v. Hinton*, 41 Ark. App. 84, 848 S.W.2d 436 (1993), this court held that a warranty deed is a contract between a grantor and a grantee. There, this court held that Murchie was allowed to recover from Hinton the reasonable costs of defending her title against a third

party and that Arkansas Code Annotated section 16–22–308 changed the old rule that a covenantee was not allowed to recover his attorney's fees for breach of warranty from the covenantor. *Id.*

The Lawrences' case was partially pled as a breach of contract. The complaint requests relief of "an award of attorneys fees regarding the breach of contract claims arising out of the breached original warranty deeds[.]" Because the Lawrences pled their action as a breach of contract, the Craftons claim that they are entitled to attorney's fees as the prevailing party. *See Cumberland Financial, supra.* On the other hand, the Lawrences' answer to the counterclaim stated that the Craftons "tortiously clouded title to the property in a brazen attempt to deprive them of any reasonable use of the property." The Craftons argue that this language is a claim over an implied warranty for quiet enjoyment. Therefore, the Craftons claim that *Curry* and *Murchie* apply, making attorney's fees allowable.

The Lawrences reply to the Craftons' attorney's-fee argument, claiming that even though the words "breach of contract" appear in the complaint, they prayed that the trial court void the correction deeds and quiet their title to 110 acres' mineral rights. The Craftons counterclaimed, asking the trial court to either reform the warranty deeds or declare the correction deeds valid or quiet title to the mineral rights in them. The Lawrences contend that neither party sued on a contract or to enforce an implied covenant in a warranty deed. Therefore, the Lawrences contend that the general rule applied in this case—each party should bear its own attorney's fees and costs. The Lawrences further contend that, even if attorney's fees were permitted in this case, the Craftons have failed to show that the

trial court abused its discretion in disallowing the fees.

When a decision is within the discretion of the trial court, the trial court abuses that discretion by failing to exercise it. *Gullahorn v. Gullahorn*, 99 Ark. App. 397, 260 S.W.3d 744 (2007). The trial court here specifically stated in its order that the statute "does not authorize the award of attorney's fees with regard to a reformation action." However, the Lawrences attempted throughout to enforce the first set of deeds. Their complaint claimed that they were entitled to "an award of attorney's fees regarding the breach of contract claims arising from the breached original Warranty Deeds[.]" Deeds are contracts in Arkansas. *See Murchie, supra.* Therefore, the Lawrences' claims fall under Arkansas Code Annotated section 16–22–308. The trial court failed to use its discretion regarding awarding an attorney's fee; thus, an abuse of discretion occurred. Because the trial court failed to exercise its discretion, the order denying attorney's fees is reversed and the matter remanded for further proceedings consistent with this opinion.

Affirmed on direct appeal, and reversed and remanded on cross-appeal.

HART and BROWN, JJ., agree.